Sam **BEARDEN**, Plaintiff-Appellant,

v.

**COUNTRYSIDE CASUALTY COMPANY,**
Defendant-Respondent.

No. 7986.

Springfield Court of Appeals.

Missouri.

Dec. 19, 1961.

Kearby & Calvin, Poplar Bluff, for appellant.

Riddle, Baker & O'Herin, Veryl L. Riddle, Charles H. Baker and Edward F. O'Herin, Malden, for respondent.

McDOWELL, Judge.

This is an action on an insurance policy issued by defendant, Countryside Casualty Company, to recover for loss sustained when plaintiff's house and household goods were totally detroyed by fire January 15, 1960.

Plaintiff's petition, after alleging the issuance of the policy, dated March 1, 1959, and payment of the premium in the sum of $57.30, pleaded that while said policy was in force the dwelling and household goods covered in said policy were totally destroyed by fire; that proof of loss was made and payment thereof refused by defendant. The prayer was for the face of the policy, $12,-000, $1200 for vexatious refusal to pay and $1,000 attorney fee.

Defendant's second amended answer admitted the issuance of the policy, payment of the premium thereon, but denied all other allegations. It pleaded affirmatively that plaintiff made false representations of material facts in his application for the policy and in the proof of loss. The specific misrepresentations in the application were: (1) That insured had never suffered a fire loss; (2) That no company had ever declined or cancelled insurance for him; (3) That he had never been convicted of a crime; and, (4) That the property insured was subject to only one mortgage.

The specific misrepresentations made in the proof of loss were: (1) That the cause

of loss was unknown and the loss did not originate by his own acts; (2) That the original cost and value of insured's property at the time of fire were misstated; (3) That no other person but one, R. W. Adams, had any interest in insured's property.

The answer further pleaded that defendant has returned the premium with interest thereon to plaintiff; that it has paid $4034.-03 to R. W. Adams under the terms of the policy.

The prayer was for discharge of defendant and costs.

Plaintiff's second amended reply was a general denial of affirmative defenses pleaded in answer. It admitted receipt of checks returned for premium paid with interest and tendered the same into court; admitted defendant paid to Adams the amount claimed in the answer and consented that such payment be set off against any judgment awarded plaintiff.

The reply pleaded that plaintiff made truthful answers to all questions asked by defendant's agent in the application for insurance and that he signed the same without knowing whether the agent wrote in the correct answers.

This was a jury-tried case. At the close of plaintiff's evidence the trial court sustained defendant's motion for a directed verdict. Motion for new trial was overruled and judgment entered for defendant. Plaintiff appealed.

This action, as originally filed, named as defendants, Countryside Casualty Company and M. F. A. Mutual Insurance Company. At the beginning of the trial plaintiff dismissed as to M. F. A. Mutual Insurance Company.

The sole issue presented for decision in this case is, did plaintiff's evidence show as a matter of law that he made misrepresentations of material facts in the application for insurance which rendered the policy voidable? It is contended by the defendant that the trial court did not err because plaintiff's evidence further shows, as a matter of law, that plaintiff was guilty of willful false swearing with intent to deceive regarding material matters in the proof of loss.

It is plaintiff's theory that the application for insurance was made in the office of defendant's agent; that the agent asked the questions and inserted the answers therein and that plaintiff made truthful answers to all questions asked; that plaintiff signed the application without reading it; that if the answers inserted therein were wrong it was due to the fraud, negligence or mistake of defendant's agent without collusion with the applicant and the company is estopped to deny liability on the basis of the answers.

We will state such parts of the evidence as necessary for a decision of the issues involved.

On March 1, 1959, defendant issued to plaintiff the policy of insurance sued on insuring plaintiff's dwelling house for $8500 and household goods for $3500 against loss by fire and received from plaintiff $57.30 premium.

To secure the issuance of this policy plaintiff signed a written application in the office of defendant's agent, John A. Frazier. The agent asked the questions contained therein and filled in the answers thereto. Plaintiff signed it without reading or knowing whether all the questions had been answered or that such questions had been truthfully answered.

This application contained the following questions and answers thereto:

"Is Property mortgaged? *Yes.* Amount of Mortgage? *$4250.00.*

"Name of mortgagee? *R. W. Adams.*

"5. Have you ever suffered a fire loss? *No.*

"6. Has any company ever cancelled or declined (Fire, Theft or Liab.) insurance for you? *No.*

"7. Have you even been convicted of a crime? *No.*"

The application contained the following provision: "The undersigned applicant hereby applies for an insurance policy with the coverages indicated herein, ON THE BASIS OF THE REPRESENTATIONS MADE IN THIS APPLICATION."

Plaintiff testified that defendant's agent, Frazier, asked him a number of questions. He gave this evidence:

"Q. Did he ask you if this property to be insured was mortgaged? A. Yes, sir.

"Q. And what did you tell him? A. I gave him the amount.

"Q. And you had a mortgage on the house? A. Yes.

"Q. Did you tell him that Mr. R. W. Adams of Van Buren had a mortgage for $4,250.00 at that time? A. Part of the amount was paid.

"Q. Did you tell him about any other mortgages? A. No, sir. He never asked me about any other.

"Q. Were there any other mortgages on the property you were attempting to insure? A. There was more or less on some of my furniture that was originally from the tavern, fixtures."

Plaintiff identified two chattel mortgages, signed by him, mortgaging his household goods, which were against said property at the time he signed the application. One mortgage was to Standley Gas & Electric Company, which, plaintiff testified, had a balance due of $1800.00; a second mortgage was to Superior Loan Company of Poplar Bluff for $480.00.

As to previous fire loss, plaintiff testified that his house trailer burned in 1937 and he collected insurance thereon. He testified he told defendant's agent of this loss at the time of the making of the application.

As to the cancellation or declining of other insurance, contained in the application, plaintiff testified he was not asked this question but admitted that he had had automobile insurance, including fire coverage, cancelled in 1953; that at the time of the application for insurance he had attempted to renew a policy against his home and household goods in another company for $12,000; that the company refused to write the policy for that amount but offered to write it for $8500. Plaintiff testified:

"Q. Isn't it true that they declined to insure you in March, 1959, your house and furniture for $12,000.00? A. They would not insure it."

The evidence was that in January, 1960, the house and all of its contents were totally destroyed by fire. Plaintiff made proof of loss, signed and sworn to by him. It contained a statement as to the interest of insured in the property and the answer thereto stated "No other person or persons had any interest therein or encumbrance thereon, except: R. W. Adams * * *". The truth was that there were at that time outstanding two chattel mortgages, one with a balance due of $1800.00 and the other for $480.00. Regarding this misstatement of fact, plaintiff testified that he did not realize he was required to list all mortgages.

Immediately after the fire defendant's adjuster took a written statement from plaintiff, which is in evidence as defendant's exhibit 7. It was signed by plaintiff and contained the following answer: "I do not owe anything on any of my furniture other than my kitchen equipment which was removed from my tavern". Plaintiff admitted he signed this statement but said he did not recall telling the adjuster that.

It is admitted by plaintiff that defendant tendered to him the premium paid for the insurance with interest totalling $61.29. He did not cash the checks but tendered them into court.

In our opinion we will refer to appellant as plaintiff and to respondent as defendant, the position occupied by the parties in the lower court.

■ In determining the sufficiency of the evidence to sustain a submitted theory of action or defense litigants, plaintiffs or defendants, are entitled to a consideration of the evidence and the reasonable inferences therefrom in the most favorable light. Rudin v. Moss, Mo.Sup., 349 S.W.2d 893, 894 [1]; Christie v. Gas Service Co., Mo.Sup., 347 S.W.2d 135, 137 [1]; Adler v. Ewing, Mo.App., 347 S.W.2d 396, 398 [1]; Bays v. Jursch, Mo.App., 340 S.W.2d 430, 433 [3].

Plaintiff relies on the rule of law declared in Zeilman v. Central Mut. Ins. Ass'n, 224 Mo.App. 145, 22 S.W.2d 88, in which the court stated on page 90 [2] of the opinion:

"Does the failure of Griffin to insert the information that insured gave him estop defendant from insisting upon a breach of the warranty contained in the application? The rule in reference to this matter is well stated in 32 C.J. pp. 1333, 1334:

" 'Where the facts have been truthfully stated to its agent but by fraud, negligence or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured.'

\*    \*    \*    \*    \*    \*

"However, in order for this rule to be brought into play it must appear that the insured did not know what was in the application when she signed it. In other words that she neither read the application after it was made out nor saw the answers inserted therein. It thus appears that in order for the defendant to be estopped there must have been some concealment or deception practiced by Griffin upon the insured. Thomas v. Modern Woodmen of Am., 218 Mo.App. 10, 260 S.W. 552. It therefore was incumbent upon plaintiff to show that the insured was ignorant of that fact that the application did not contain the information she had given Griffin when she signed it."

This doctrine was affirmed in Longo v. John Hancock Mutual Life Ins. Co., Mo. App., 142 S.W.2d 871.

It was stated in Toler v. Missouri Ins. Co., Mo.App., 243 S.W.2d 788, 792 [7]:

"Where the insured at the time of applying for a policy of insurance truthfully states to the agent the facts pertaining to the risk and the agent inserts in the application mistaken or intentionally false statements the insurer cannot set up such misstatements in avoidance of the policy." (Citing much authority).

■ An application for a policy of insurance is an offer, intended to be relied upon and to become a part of the contract when accepted. Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 662; Haman v. Pyramid Life Ins. Co., Mo.App., 347 S.W. 2d 449, 454 [2, 3]; Minich v. M. F. A. Mutual Ins. Co., Mo.App., 325 S.W.2d 56, 57 [1–3].

In the instant case plaintiff testified that he answered truthfully all questions asked him by defendant's agent regarding the making of the application for the policy of insurance. He testified that he signed it without reading it because he had faith in defendant's agent; that he did not know what answers the agent wrote in the application or if all the questions contained therein were asked. He testified that, to the question as to mortgages on the property, he told the agent he had a mortgage on his home and gave him the name of the mortgagee and the amount of the mortgage; that he did not inform the agent that at that time there were two chattel mortgages against the household goods being insured on which there was due some $2280.00. His reason, he said, for not giving that information was that the agent did not ask him. There is no testimony that the agent had

any knowledge of these mortgages when he filled in the answer to this question. Plaintiff testified that the question contained in the application, "Has any company ever cancelled or declined (Fire, Theft or Liab.) insurance for you?", which had an answer of "No", was not asked him so the rule of law governing plaintiff's contention, as set out above, is not complied with where the evidence shows that the true facts were not stated to the agent at the time the application was filled out or that there was evidence that the agent had knowledge of such facts.

In Gooch v. Motors Insurance Co., Mo. App., 312 S.W.2d 605, 609 [2, 3], it was stated: "In the instant case plaintiff did testify that when he signed the application for insurance he did not read the answers to the questions as to his age or as to the model of the trade-in car, but he made no denial that the answers were not plainly shown on the application or that there was any concealment or deception practiced by either Johnson or his secretary upon the insured. The application in evidence shows that these statements were made in large letters on white paper, plainly visible to anyone who wanted to see them and plaintiff admits that both he and his father signed the application. Plaintiff was a high school graduate, had been a member of the Armed Services and, at the time of this suit, was a member of the police force in Creve Coeur, Missouri. Plaintiff's evidence wholly fails to justify a plea of estoppel. There is not the slightest evidence that concealment or deception was practiced by agent, Johnson, or by his secretary in securing the written application for the insurance. The rule of law is that, in absence of fraud or mistake, one is bound by the written contract, which, when applicable, defines the limits of the contract. One who can read and does not read is foreclosed by his own negligence, and while law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and "accessible means of information. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658."

In this same case, page 609, 68 S.W.2d 873, the court quotes from Muller v. Mutual Benefit Health & Accident Ass'n, 228 Mo. App. 492, 68 S.W.2d 873, 882(5), the law as follows:

■ " 'It is true that a person who is competent to contract is, ordinarily, presumed to know the contents of a contract he signs; and the fact that he does not read it or does not have it read to him before signing does not rebut the presumption. * * * It is only where fraud, accident, or mistake intervenes that one may be relieved under such circumstances. In the absence of fraud, accident, or mistake appearing, the law concludes the matter in accord with the terms of the writing that the party has signed; for, if he can read, he must do so; and, if not, then it devolves upon him to have another read or explain it to him.' " (See authorities cited).

■ This rule of law is so well settled that it is unnecessary to go into the many authorities sustaining the same. We find from the record that the fact that defendant's agent propounded the questions contained in the application for the policy of insurance in issue and filled in the answers to such questions does not relieve plaintiff from knowing the contents thereof and he is bound by such answers unless his evidence shows that he revealed to the agent at the time the true facts or that the agent had knowledge of such facts. The fact that plaintiff trusted the agent to put in the correct answers did not relieve him from his negligence in not reading the application before he signed it. Plaintiff, in a letter to the company, stated his qualifications and we think his evidence shows that he was able and had opportunity to read the application but did not.

The answers given to the two questions above stated in the application failed to re-

veal the truth and were in so concealing the truth in the first answer as to the mortgages misleading to the company and the question as to having other insurance cancelled or declined, the answer is wholly untrue. So we find that plaintiff is bound by these representations.

There is but one other question relating to these representations and that is whether the misstatements to the questions asked in the application were material as a matter of law so as to justify the trial court in directing a verdict.

■ Representations regarding mortgages on the insured property are material as a matter of law.

In Buck v. Stuyvesant Ins. Co., 209 Mo. App. 302, 237 S.W. 840, 842[4] the law is stated:

"The next question for consideration is whether or not the representation in the application for insurance that the property was not mortgaged would avoid the policy, as a matter of law. It is usually a question for the jury as to whether or not misrepresentations materially affect the risk, depending largely on the kind and character of misrepresentations. Boggs & Leathe v. American Insurance Co., 30 Mo. 63; Tebeau v. [Globe & Rutgers] Fire Ins. Co., 271 Mo. 626, 197 S.W. 130, 2 A.L.R. 1041. In such cases it should appear that the insurer would not have issued the policy, or would have charged a higher premium, if he had known the facts. * * * But where the representations were that the property was not mortgaged, when in fact it was mortgaged for the full value, such misrepresentations, under the facts in evidence here, were material to the risk, as a matter of law, and voided the policy. Hollenbeck [& Co.] v. [Mercantile Town Mutual Fire] Ins. Co., 133 Mo.App. 57, 113 S. W. 217; Cagle v. [Chillicothe Town Mutual Fire] Ins. Co., 78 Mo.App. 215; * * *."

In Stoddart v. National Liberty Ins. Co., Mo.App., 251 S.W. 398, 401 [4], the law is stated:

"I think there is no question but that the existence of the mortgage was a material risk, and that the question of its materiality should not have been submitted to the jury. The following cases hold that a mortgage is a material risk: * * *." (See authorities cited.)

In Gooch v. Motors Insurance Co., supra, 312 S.W.2d page 608, the court quoted from Berry v. Equitable Fire & Marine Ins. Co., Mo.App., 263 S.W. 884, 886 [1], the law as follows:

" 'A fact material to the risk within the meaning of the word "material" as used in the statute is one which, if communicated to the insurer, would cause refusal to insure, or, if accepted and " 'policy issued, the rate would be higher.' " (Citing authority).

In Minich v. M. F. A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 58 [4] the law is stated:

■ "A representation that he had not previously had a policy cancelled was material to the risk and grounds for avoidance of the policy if untrue. State Farm Mutual Automobile Insurance Co. v. Gaekle, D.C., 131 F.Supp. 745, 746; Teich v. Globe Indemnity Co., Mo.App., 25 S.W. 2d 554, 556–557; Maryland Casualty Co. v. Eddy, 6 Cir., 239 F. 477, 480; Harris v. Allstate Insurance Co., Tex.Civ.App., 249 S.W.2d 669, 672–673; * * *". (See other authorities cited.)

In 29 Am.Jur., § 701, p. 963, the law is stated:

"The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium. * * *"

In the instant case the misrepresentations were regarding mortgages or encumbrances on the property. Our appellate courts have held that such misrepresentations are material as a matter of law and that they will avoid a policy. Likewise, we think that misrepresentations in the application for insurance regarding prior cancellation of insurance are material to the risk as a matter of law. See 29A Am.Jur. § 969, p. 159; 45 C.J.S. Insurance § 534, p. 275.

We find that the trial court was justified in sustaining the application for directed verdict at the close of plaintiff's case because of the misrepresentations discussed herein

It is unnecessary to consider the other assignments in defendant's brief.

Judgment affirmed.

STONE, P. J., and HUNTER, Special Judge, concur.

RUARK, J., not participating.