Josephine **SCHNATZMEYER**,
Plaintiff/Appellant,

v.

**NATIONAL LIFE INSURANCE COMPANY**, Defendant/Respondent.

No. 56065.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1990.

Application to Transfer Denied
July 31,1990.

Arthur G. Muegler, Jr., St. Louis, for plaintiff/appellant.

John P. Emde, Wilbur L. Tomlinson, St. Louis, for defendant/respondent.

GRIMM, Judge.

In this jury-tried case, plaintiff Josephine Schnatzmeyer brought suit against defendant National Life Insurance Company to recover proceeds as the beneficiary under her daughter Linda's life insurance policy. Following a jury verdict in plaintiff's favor, the trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals. We affirm.

Plaintiff's brief contains seven points relied on. First, the trial court erred in granting defendant's motion for j.n.o.v.; because defendant failed to file a motion for directed verdict at the close of plaintiff's case, thereby waiving the issue of submissibility. We disagree, because defendant's filing of a motion for a directed verdict at the close of all the evidence was sufficient to preserve the issue of submissibility. Second, the trial court erred in allowing defendant to assert its defense of misrepresentation. Plaintiff argues that defendant waived and was estopped from asserting this defense, because it failed to tender back the unearned premium and interest on the policy within a reasonable time after receiving notice of Linda's death. We disagree, because defendant deposited the premium and interest with the trial court before trial as required by statute.

Third, the trial court erred in granting defendant's motion for j.n.o.v.; because the misrepresentations were due to mistakes made by defendant's agent and because Linda was not afforded a fair and reasonable opportunity to discover the contents of the application. We disagree; because absent fraud, mistake, or concealment, Linda was bound by her signature on the application. Fourth, the trial court erred in allowing Dr. Lindberg to testify concerning certain matters the second time he was called. We disagree. Fifth, the trial court erred in granting defendant's motion for j.n.o.v.; because defendant failed to establish the elements of its affirmative defense as a matter of law. We disagree, because all the elements of defendant's affirmative defense were either not in dispute or were established as a matter of law.

Plaintiff's sixth and seventh points attack the trial court's decision to grant defendant's motion for a new trial. Because we affirm the j.n.o.v., we do not address these two points.

## I.

On October 17, 1983, Linda Schnatzmeyer visited Dr. Owen Kantor for the first time. He is board certified in internal medicine and rheumatology. She told him that she had previously been treated with various medications by Drs. Johnson and Richardson.

She complained of blotchy skin, throbbing fingers, and swollen hands. She had tightness of the skin over her fingers, and her calves were tight. These symptoms were accompanied by aches and pains in her elbows, feet, and knees associated with weak and tender muscles. Dr. Kantor suspected that she had scleroderma.

Scleroderma, a synonym for progressive systemic sclerosis, is a serious disease characterized by an unrestrained overgrowth of connective tissue in one's body.

It can involve the joints, the kidneys, the lungs, the heart, and other internal organs. Scleroderma can range from a mild condition to an inexorably progressive disease which results in kidney failure, heart failure, and death within a short time. The cause of the disease and its cure are unknown.

Dr. Kantor hospitalized Linda from October 19 to 21, 1983, to confirm his diagnosis. Numerous blood tests were performed, and she was also given breathing tests and x-rays. The tests confirmed that she did, in fact, have scleroderma.

Dr. Kantor decided to treat her disease with a drug called D–Penicilamine. Before starting treatment, however, he gave Linda a copy of the Physician's Desk Reference so she could have a better understanding of the drug. He then discussed with Linda the toxic nature and possible side effects of the drug. She agreed to undergo the treatment and have appropriate check-ups.

Linda saw Dr. Kantor regularly between November, 1983, and April, 1984. She visited his office eight times during that period. On February 20, 1984, Dr. Kantor noted that she had more skin tightening, and was having some difficulty in swallowing. He increased her medication.

At her April 23, 1984, appointment, she was "pretty stable, with the exception of progression of tautness in her hands and forearms." She had some discomfort in her thighs when walking. She was continued on the same medication. Her next appointment, which she did not keep, was scheduled for June 12, 1984.

On June 8, 1984, Linda met defendant's agent at the Missouri Athletic Club for lunch. The purpose of this meeting was to have her apply for a life insurance policy from defendant. At the time, agent was unaware of Linda's health problems.

While they ate, agent made a sales presentation and Linda decided to apply for a policy. He then asked her for information needed for the application. Agent did not recall whether he asked the questions verbatim from the application form or whether he paraphrased them. Agent recorded the answers in his own handwriting. When the forms were complete, he handed them across the table to Linda, and she signed them.

Her application revealed no health problems. It failed to disclose, among other things, her hospitalization in October, 1983, her treatment by Dr. Kantor, and the fact that she was suffering from scleroderma. On July 3, 1984, a policy was issued by defendant to Linda based upon her application.

Linda's next visit with Dr. Kantor was September 10, 1984. Her health was deteriorating. She was hospitalized from October 3 to 12. She reentered the hospital on October 29. She died in the hospital on November 14, 1984. The death certificate shows her immediate cause of death as scleroderma, which caused kidney failure and a heart attack.

Plaintiff, as beneficiary under the policy, filed a claimant's statement with defendant on November 29, 1984. On February 25, 1985, plaintiff sent a death certificate to defendant. Through its investigation, defendant learned that Linda had been diagnosed as having scleroderma prior to her application. Based on this information, on May 17, 1985, defendant rescinded the insurance contract and sent plaintiff a check refunding the premiums with interest.

Plaintiff filed suit against defendant, claiming defendant breached the insurance contract by failing to pay plaintiff the policy proceeds. Defendant asserted the affirmative defense of misrepresentation, claiming that Linda made at least nine misrepresentations on her application.

The jury returned a verdict for plaintiff. The trial court, however, granted defendant's motion for j.n.o.v. The trial court held that all of the elements of defendant's affirmative defense "were either not in dispute, or were established as a matter of law."

Plaintiff's points relied on overlap and are less than clear. As such, we address those issues which we have determined are raised by her brief.

## II.

Plaintiff first alleges that the trial court erred in granting defendant's motion for j.n.o.v.; because defendant failed to file a motion for directed verdict at the close of plaintiff's case, thereby waiving the issue of submissibility. To preserve the issue of submissibility, she contends that defendant had to "file a motion for directed verdict at the close of [plaintiff's] Case–In–Chief and at the close of [defendant's] Case–In–Chief."

■ Rule 72.01(b) is controlling. A motion for judgment notwithstanding the verdict requires only that the moving party must have "moved for a directed verdict." If that moving party presented no evidence, then the required motion is made at the close of plaintiff's evidence. If, however, the moving party presents evidence, the moving party waives any trial court error in denying the motion filed at the close of plaintiff's case. *McRaven v. F–Stop Photo Labs, Inc.*, 660 S.W.2d 459, 460 (Mo.App.S.D.1983).

■ If the moving party, as here, presented evidence, the required motion for a directed verdict must be made at the close of all the evidence. Failure to file such a motion waives a contention that plaintiff failed to make a submissible case. *Frisella v. Reserve Life Ins. Co.*, 583 S.W.2d 728, 731 (Mo.App.E.D.1979); *cf.* *Vinson v. Vinson*, 725 S.W.2d 121, 123 (Mo.App.E.D.1987) ("[N]othing in Rule 72.-01 prohibits a trial court from entering a directed verdict or a j.n.o.v. without motion when merited.")

■ Here, defendant filed a motion for directed verdict at the close of all the evidence. As a result, it did not waive the issue of submissibility. Point denied.

## III.

■ Plaintiff's second point asserts that defendant waived and was estopped from asserting its affirmative defense of misrepresentation. Plaintiff bases her waiver and estoppel arguments on defendant's alleged failure to tender back to plaintiff the premium and interest on the policy within a reasonable time after defendant had notice of Linda's death.

Plaintiff filed a claimant's statement with defendant on November 29, 1984. The section on "cause of death" was blank. Although the instructions on the statement indicate that either a death certificate or physician's statement is required, neither was furnished.

On February 25, 1985, plaintiff sent to defendant a death certificate and a completed questionnaire. On May 17, 1985, defendant tendered to plaintiff a check for the premium and interest. Further, the court's docket sheet reflects that more than four months before trial, defendant paid the required amount into the registry of the court.

Section 376.610 * sets out the requirement for raising the defense of misrepresentation to avoid liability under a life insurance policy. It provides that the misrepresentation defense cannot be raised "unless the defendant, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies." *Id.*

Plaintiff's brief cites three cases in support of her position, *Garvin v. Union Mut. Life Ins. Co.*, 79 S.W.2d 496 (Mo.App.E.D. 1935), *Morrison v. Fidelity–Phenix Fire Ins. Co.*, 71 S.W.2d 816 (Mo.App.W.D.1934), and *Aetna Ins. Co. v. Doheca A & W Family Restaurant*, 503 F.Supp. 199 (E.D. Mo.1980). None of these cases aids plaintiff, because they do not involve misrepresentations concerning life insurance policies.

Plaintiff's contention that defendant waived and was estopped from asserting its misrepresentation defense is without merit. "Defendant brought the premiums into court before the trial, and this was all that was required." *Mack v. Western & S. Life Ins. Co.*, 53 S.W.2d 1108, 1109 (Mo. App.E.D.1932). Point denied.

* All statutory references are to RSMo 1986.

### IV.

Plaintiff's third and fifth points assert that the trial court erred for various reasons in granting defendant's motion for j.n.o.v. First, plaintiff argues that Linda was not bound by her signature on the application, because the misrepresentations were due to mistakes made by defendant's agent. Second, she asserts defendant's agent did not afford Linda a fair and reasonable opportunity to discover the contents of the application. Third, plaintiff contends defendant failed to establish the elements of its affirmative defense as a matter of law.

We first recognize that entering a j.n.o.v. "is the equivalent of directing a verdict at the close of the evidence." *Vinson*, 725 S.W.2d at 123. A directed verdict may be entered "where there is no real dispute about the basic facts, supported by uncontradicted testimony, essential to a claim or affirmative defense." *Consolidated Pub. Water Supply Dist. No. C–1 v. Farmers Bank*, 686 S.W.2d 844, 849 (Mo.App.E.D. 1985). Further, a trial court may enter a j.n.o.v. for a defendant "when plaintiff's evidence establishes that an affirmative defense bars recovery." *Id.*

### A.

Under these points, plaintiff first contends that the misrepresentations on the application were a result of defendant's agent's mistake and concealment in filling out the application. Further, plaintiff contends that Linda was not afforded a fair and reasonable opportunity to discover the contents of the application. She points out that all the entries on the form were in agent's handwriting, the questions were asked fast, and the questions were sometimes paraphrased.

Agent testified about his customary practice in completing application forms. When dealing with young people, he asked "questions what would be considered fast ... versus old persons where you really have to slow down." Also, with younger people, he "pretty much paraphrased" the questions, where with older persons, he asked "more specific questions."

Plaintiff contends that this technique constituted agent's "mistake." According to plaintiff, agent's mistake waived defendant's right to avoid the policy based on the misrepresentations. In support of her argument, plaintiff cites the following: 17 J. Appleman, INSURANCE LAW AND PRACTICE § 9401 (1981); *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883 (Mo.App.S.D. 1977); *Young v. Ray Am., Inc.*, 673 S.W.2d 74 (Mo.App.W.D.1984); *Farmers Mut. Fire & Lightning Ass'n v. LaVallee*, 501 S.W.2d 69 (Mo.App.W.D.1973); *Sappington v. Central Mut. Ins. Ass'n*, 77 S.W.2d 140 (Mo.App.W.D.1934).

■ Plaintiff misreads those authorities. None of those authorities suggest that it is a mistake simply because an agent did not ask the questions verbatim. *See, e.g.*, 17 *Appleman*, § 9401. Rather, as the title of the cited section of *Appleman* indicates, it concerns "Insertion of False Answers by Agent." For example, in the cited section, the author says that the "fact that the insured may have signed the application would not render him responsible for *false statements inserted by the agent* therein without his knowledge, where he had given truthful answers and had no reason to believe that they would be falsified by the company's representative." *Id.* (emphasis added).

■ Thus, under the cases and the treatise cited by plaintiff, a mistake occurs either when the agent is given true answers but inserts erroneous ones without the knowledge of the insured or where the agent fills in the application without asking any of the questions. Here, there is no evidence that Linda gave true answers which the agent changed. Nor is there any evidence that the application was completed without Linda answering questions.

■ Also, plaintiff offered no evidence of concealment on agent's part. After he had completed the application, he handed it across the table to Linda who glanced at it, signed it, and handed it back. An applicant who is able to read is "legally bound to know the contents of the application she signed, whether she read it or not ... and

this is not affected by the fact she relied upon or trusted the agent to prepare the application for the policy." *Miller v. Plains Ins. Co.*, 409 S.W.2d 770, 772–73 (Mo.App.S.D.1966).

We find no evidence of mistake or concealment. As such, Linda was "bound to know the contents of the application she signed." *Id.*

### B.

Further, plaintiff alleges defendant failed to establish its affirmative defense as a matter of law. Plaintiff contends that defendant failed to show (1) Linda knew the representations were false; (2) she intended defendant to rely on the false representations; (3) her scleroderma condition was material to defendant in issuing the policy; and (4) defendant relied upon the representations in issuing the policy.

### 1.

■ As to the plaintiff's first contention, Linda must have known the representations were false. Clearly, she was aware of her hospitalization in October, 1983. Yet, the application denied that she had been hospitalized within the five years previous to June 8, 1984.

She was equally aware of her multiple visits with Dr. Kantor in the months prior to her application. She had an appointment to see Dr. Kantor four days after she signed the insurance form. The application denied that she had seen any physician other than a Dr. Wilbois.

Further, Linda's application indicated that the only x-rays she had had within the past five years were part of an annual check-up. On the application, agent wrote: "x-ray annual check-up, everything okay." In contrast, the evidence showed she had x-rays taken when she was in the hospital during October, 1983.

Linda's application also denied that she had had treatment for any disease of the skin or joints. In fact, she first visited Dr. Kantor complaining of blotchy skin and pain in her joints. From her symptoms, Dr. Kantor diagnosed her as having sclero-derma and began treating her for that disease after her stay in the hospital. Dr. Kantor testified that he discussed the disease and treatment with Linda.

■ In addition, on her application, Linda stated her health was not impaired in any way. Even in the highly unlikely event that she did not know she was suffering from scleroderma, she at least knew that her health was impaired because of her pain and discomfort as well as the medical treatment she was receiving.

### 2.

■ As to plaintiff's second contention, defendant also established Linda's intent that defendant rely on her representations. The paragraph above Linda's signature on the application states that her answers to the questions on the application were "correctly recorded and they are complete and true to the best of [her] knowledge and belief." Immediately following that statement, and adjacent to her signature, the form says that the answers "shall be the basis of any action taken by the company."

Linda, a high school graduate, was a data processor for a savings and loan association for six years. She obviously was capable of reading and writing. Her "intent to deceive is sufficiently established by [her] signature on the application, which contained ... material misrepresentation[s] which [were] within [her] knowledge at the time [she] signed the application." *United States v. Home Life Ins. Co.*, 508 F.Supp. 559, 564 (E.D.Mo.1980).

### 3.

■ As to plaintiff's third contention, defendant also established that Linda's scleroderma condition was material to its decision of whether to issue the policy. Defendant presented the undisputed testimony of Dr. Lindberg. As an employee of defendant, Dr. Lindberg advised the company's lay underwriters on whether they should insure certain risks. The underwriters sought his opinion on the likelihood that people with particular diseases would live or die.

Dr. Lindberg's duties for defendant also required him to update and enlarge the manual used by the underwriters. The manual establishes underwriting policies by categorizing illnesses by the degree of risk involved. Scleroderma has such a high mortality rate that the manual proscribes that the application of one suffering from that disease should be declined.

From the information in Dr. Kantor's files and the hospital records, Dr. Lindberg was convinced that Linda, at the time she applied, suffered from progressive systemic sclerosis (scleroderma). He testified with "absolute certainty" that, had Linda disclosed her condition when she applied, defendant would have declined her application. He based his conclusion on the progressive nature of her illness, the use of a toxic drug as part of her treatment, and her inability to tolerate the toxic drug at effective levels. Dr. Lindberg's undisputed testimony clearly establishes the materiality of Linda's scleroderma condition to defendant's decision whether to accept her application.

### 4.

Plaintiff's final contention, that defendant failed to establish its reliance on the application, is also without merit. First, Dr. Lindberg's testimony referred to above indicates the reliance defendant placed on the application. Second, the application acknowledges that the answers on the application "shall be the basis of any action taken by the [defendant]." "Under such an agreement it is not necessary for [defendant] to prove its reliance upon [Linda's] representations since it had a contractual right to rely thereon." *New York Life Ins. Co. v. Feinberg*, 229 S.W.2d 531, 539 (Mo.Div.1 1950).

### C.

Finding no merit in plaintiff's third and fifth points relied on, they are denied.

### V.

Plaintiff's fourth point asserts the trial court erred in permitting Dr. Lindberg to testify the second time he was called by defendant. Plaintiff argues that his testimony was inadmissible for the following reasons: (1) his testimony regarding defendant's underwriting policy was incompetent, because it violated the best evidence rule; (2) his testimony on what defendant would do if an applicant had progressive systemic sclerosis lacked foundation and called for non-probative, irrelevant, speculative hearsay; (3) his opinion of Linda's condition at the time of the application did not meet the required standard of a reasonable degree of medical certainty; (4) his testimony was speculative and had no probative value; (5) his testimony whether the underwriting policy provided guidelines for an applicant with progressive systemic sclerosis was speculative; and (6) his testimony regarding why defendant would decline an applicant with progressive systemic sclerosis was without foundation and constituted hearsay.

Of these six assertions, plaintiff supports only the first three with cited authority. Assertions (4), (5), and (6) are not matters of first impression, nor are they just questions of logic or language construction. Citation to authority to support those points is, therefore, appropriate. *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 396 (Mo.App.W.D.1984). Because plaintiff has failed to cite authority in support of contentions (4), (5), and (6), they are deemed abandoned. *Id.*

In support of her first contention, plaintiff cites *Sargent v. Wekenman*, 374 S.W.2d 635 (Mo.App.E.D.1964) as authority for her assertion that the underwriting manual was the best evidence of defendant's underwriting policies. As such, argues plaintiff, Dr. Lindberg should not have been permitted to testify about those policies.

We first note that plaintiff raised a "best evidence" objection only once. This objection was to a preliminary, hypothetical question, concerning high blood pressure. Thereafter, Dr. Lindberg identified as an exhibit the underwriting manual. Plaintiff made no further objections based on "best evidence."

Dr. Lindberg testified he used the manual on a "daily" basis in the course of his employment. In fact, he was one of three doctors who rewrote and updated the manual. The underwriting policies contained in the manual were also within his personal knowledge. "[T]he fact that a witness refers to records that contain all or part of the same information that he testifies to based on his personal knowledge does not render his testimonial evidence incompetent and an objection based on the best evidence rule is not well taken." *Aluminum Prod. Ent., Inc. v. Fuhrmann Tooling*, 758 S.W.2d 119, 122 (Mo.App.E.D. 1988).

Plaintiff's second contention under this point relied on is that Dr. Lindberg's testimony regarding how defendant would handle an applicant with progressive systemic sclerosis and why it would do so lacked foundation and called for non-probative, irrelevant, speculative hearsay. As support for this contention, she cites only *Meadows v. Kinser*, 603 S.W.2d 624 (Mo. App.S.D.1980).

*Meadows* does not contain any reference to an objection based on lack of foundation, or hearsay. The words "lack of foundation" and "hearsay" do not even appear in *Meadows.* Where a contention is solely buttressed by an authority not germane, "it is tantamount to a point presented naked of citation." *Bishop v. Bishop*, 618 S.W.2d 261, 263 (Mo.App.W.D.1981). This contention is deemed abandoned. *Id.*

Plaintiff's third contention concerns Dr. Lindberg being asked if there was any question in his mind whatsoever that when Linda applied for insurance, she had scleroderma. Plaintiff objected that it was "[i]ncompetent, not to the standard of reasonable degree of medical certainty." The objection was improperly overruled. We find no prejudice, however, because Dr. Kantor's testimony that Linda had scleroderma from October, 1983, until her death in November, 1984, was not medically challenged.

Although we have ruled that a portion of this point relied on is deemed abandoned, we have reviewed the entire record and conducted independent research. This review and research fails to disclose any prejudicial error. Plaintiff's fourth point relied on is denied.

The judgment is affirmed.

SATZ, P.J., and SMITH, J., concur.