**Leo PRIESMEYER and Barbara Priesmeyer, Appellant,**

**v.**

**SHELTER MUTUAL INSURANCE CO., Respondent.**

**No. WD 55965.**

Missouri Court of Appeals, Western District.

June 30, 1999.

Robert B. Reeser, Jr., Sedalia, for appellant.

Michael B. Maguire, St. Louis, for respondent.

Before SPINDEN, P.J., EDWIN H. SMITH and RIEDERER, JJ.

ALBERT A. RIEDERER, Judge.

Leo and Barbara Priesmeyer appeal from summary judgment entered in favor of Shelter Mutual Insurance Company. We find that there are genuine issues of material fact regarding whether Mr. Priesmeyer made material misrepresentations to Shelter Mutual in his application for insurance, an application completed by an agent of Shelter Mutual. We reverse and remand.

### Facts

On February 15, 1994, Appellants visited the office of Respondent's agent, Thomas Calder, to obtain insurance on a dwelling they owned in Sedalia, Missouri. Appellant Leo Priesmeyer brought with him a copy of the application for his prior coverage by Farm Bureau Insurance Company for reference. The parties agree that, during this meeting, Appellant signed an application for homeowner's insurance to be provided by Respondent. They disagree, however, as to precisely how the application was completed.

In his sworn affidavit, Calder stated the following:

5. I completed the application by asking Leo Priesmeyer a series of questions and writing in Leo Priesmeyer's responses to those questions in the appropriate blanks of the application.

6. I specifically asked Leo Priesmeyer whether there was a mortgage on the property and he responded that there was not a mortgage on the property.

7. I specifically asked Leo Priesmeyer whether he had sustained any prior losses pursuant to question number 5 of the Applicant's Statement on the back of the application and Leo Priesmeyer reported only the two claims which are identified on the application as a 1991 hail damage claim involving a car and truck and a 1992 claim involving a tractor which caused damage to a bridge.

8. I witnessed Leo Priesmeyer sign the application for insurance and the application was filled out completely when Leo Priesmeyer signed it.

Appellant's account of how the application was completed, however, is quite different from Calder's. In Appellant's sworn affidavit, he states that Calder "did not ask [Appellant] hardly any questions; he just took the information off the Farm Bureau application and was filling in some of the blanks on the Shelter Insurance application." Appellant further stated under oath, "Tom Calder never asked me if I had a mortgage on the property I wanted to insure." In any event, Calder, on behalf of Respondent, issued to Appellant an insurance policy of $105,400.00 coverage.

One provision of the application signed by Appellant, entitled "Applicant's Statement," asked,

5. Has any applicant or partner had a fire (on real estate or personal property), other property damage, liability, or theft loss (whether insured or

not)? If yes, advise date and details.

The "Yes" box next to this provision was checked, and at the bottom of the page in the "REMARKS" section, the following notes were handwritten:

"HAIL—1991—CAR & TRUCK

1992 – TRACTOR TORE UP ON BRIDGE—$5,800 (HIT CORNER OF BRIDGE)"

No other instances of fire, property damage, liability or theft loss were reported anywhere else in the application. Appellant states in his sworn affidavit that "The 'boxes' on the application were not checked at the time I signed the application" and that "The 'remarks' section of the application was blank when I signed the application."

There is another section in the application entitled "Mortgagee." That section prompted the applicant to enter certain information concerning mortgages on the property to be insured. No information was provided there, however.

On February 16, 1996, during the term of the policy, the insured dwelling was damaged by fire. Appellant subsequently submitted a claim to Respondent for payment. Respondent, in turn, conducted an investigation of the fire and discovered that Appellant had sustained seven past fire losses. In addition, it learned that Appellant had filed claims with other insurers for hail damage five times and several more times for other property losses. None of the fire losses and only two of the other property damage claims had been disclosed in Appellant's insurance application. As a result, Respondent denied Appellant's claim for failure to disclose these prior losses and claims.

On December 10, 1996, Appellant filed a petition in four counts seeking judgment against Respondent for (1) $105,400 for damage to the house, (2) $72,780 for damage to the contents thereof, (3) $21,080 for additional living expenses and (4) a reasonable amount for debris removal. Appel-

lant included in each count a claim for vexatious refusal, for attorney's fees and for costs. Respondent answered, claiming there was no coverage for Appellant's claims under the policy because the policy was void *ab initio*, because Appellant made material misrepresentations and concealed material facts in the application for insurance and Respondent had relied on those misrepresentations to Respondent's detriment in issuing the policy. Respondent further answered that the claim was excluded from coverage because Respondent believed that Appellant set the fire that caused the damage. Thereafter, Respondent filed a motion for summary judgment. Therein Respondent claimed that, by not disclosing the fires and other property loss/damage claims pre-dating February 15, 1994, Appellant made material misrepresentations in his insurance application and thus rendered Appellant's policy void *ab initio* because of the following provision contained in the application:

I hereby make application for an insurance policy on the basis of the statements and answers to questions made on this application and I represent that such statements and answers are true. I understand that if the company discovers information contrary to that which I have provided, this policy may be voided and absolutely no coverage would exist.

Summary judgment was entered against Appellant on June 8, 1998, and this appeal ensued thereafter.

## Standard of Review

The propriety of summary judgment is an issue of law which we review de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

## Discussion

Appellant claims that the trial court erred in granting summary judgment, because there is a genuine issue of material fact. Specifically, Appellant argues that there is a genuine issue as to whether it was he or Respondent's agent, Calder, who supplied the answers to questions asked in the insurance application pertaining to whether there was a mortgage on the property and whether Appellant had sustained any prior damage/losses on the property. Appellant claims that Calder completed the application on his own without asking "hardly any questions." Respondent disputes this claim.

■ We examine whether Appellant made material misrepresentations in the application by not informing Respondent about either (a) the existence of a mortgage on the property[1] or (b) the past instances of claimed loss. The record reveals that, as of February 15, 1994, Appellant had sustained and filed insurance claims for property losses that were not reported in his application for insurance. However, the trial court did not issue findings of fact, and the record is not as clear whether there was a mortgage on the property in question as of February 15, 1994. Of course, if no mortgage existed on the property on that date, no material misrepresentation was made in the "Mortgagee" section of the application by virtue of it being left blank, and the appropriateness of summary judgment for Respondent

hinges exclusively on whether Appellant made material misrepresentations concerning prior property losses. If, on the other hand, a mortgage did exist, the trial court's disposition was proper if Appellant made a material misrepresentation concerning the mortgage.

■ In its motion for summary judgment, Respondent claims that it "discovered that there was a mortgage of about $35,000 on the property to be insured at the time of the application. *See* Union Savings Bank Loan records.. Exhibit H." Respondent provides no other evidence of the existence of the mortgage on the fire-damaged property. In his response to the motion, Appellant denies that a mortgage was on the property at the time of application, claiming that "[he] owned other realty with the address being 'Route 4, Sedalia, Missouri,' which is the only identification of the realty securing the loan on the Union Savings Bank loan record attached to the Motion as Exhibit H." Exhibit H is a computer printout titled "Paid Loan Statement" from Union Savings Bank. It appears to show that there was a mortgage on property identified only as "1st mtg Rt 4 Sedalia." However, it also appears that there was zero balance on the mortgage between February 18, 1993 and March 3, 1994. Therefore, we cannot determine from the record whether there was a mortgage on the property in question in effect February 15, 1994. Viewing

---

1. In addition to arguing that the record contains insufficient evidence of any encumbrance on the property at the time of application, Appellant argues that if there was an encumbrance on the property, it did not classify as a "mortgage." In his appellate brief, he asserts that "in the State of Missouri, the nomenclature of 'mortgage' on realty is not utilized, as the security instrument is a 'deed of trust.'" Appellant thus claims it was appropriate to leave blank the "Mortgagee" section of the application.

"Deed of trust" is defined as:
An instrument in use in some states, taking the place and serving the uses of a mortgage, by which the legal title to real property is placed in one or more trustees, to

secure the repayment of a sum of money or the performance of other conditions. Though differing in form from mortgage, it is essentially a security. *Black's Law Dictionary*, Abridged Sixth Edition, p. 286.
Similarly, "mortgage" is defined as "an interest in land or real property created by a written instrument providing security for the performance of a duty or the payment of a debt." *Id.* at 698. Consequently, for purposes of the insurance application's inquiry, there is no substantive difference between the terms "mortgage" and "deed of trust," and in this context, the difference, if any exists, is pure semantics. Thus, we find Appellant's differentiation of the words to be without legal merit.

the record in the light most favorable to Appellant, there is a genuine issue of a material fact whether there was a mortgage on the property to be insured. Consequently, we find that summary judgment for Respondent was not proper with respect to the mortgage issue; it was proper only if Appellant made material misrepresentations concerning past property losses.

A fact included in an insurance application is considered material when it appears that it might reasonably have influenced the insurance company to accept or reject the risk or to charge a different premium. *Weekly v. Missouri Property Ins. Placement Facility,* 538 S.W.2d 375, 378 (Mo.App.1976). Generally, the question of whether misrepresentations made in an application were material is for the trier of fact to decide. *Mears v. Columbia Mutual Ins. Co.,* 855 S.W.2d 389, 395 (Mo. App.1993). "However, when a misrepresentation is of such a nature that all minds would agree that it is or is not material, the question is appropriately considered to be a question of law for the court." *Id.* The evidence is quite clear that if Respondent knew of the five previous fires that Appellant sustained, much less the other property losses for which insurance reimbursement claims were filed, Respondent would have either commanded a higher premium or refused to extend the homeowner's policy to Appellant. Therefore, we cannot disagree with the trial court's determination, as a matter of law, that the alleged misrepresentations were material.

However, the question of *who* made the representations on the application has not been conclusively answered. Respondent asserts that Calder asked Appellant whether he had a mortgage on the property and whether he had sustained property losses and/or filed claims. This assertion is supported by Calder's affidavit wherein he swore: "I specifically asked Leo Priesmeyer whether there was a mortgage on the property and he responded that there was not a mortgage on the property." In response, Appellant, in his affidavit, alleg-

es that "Calder did not ask [him] hardly any questions" during their meeting, and that "[Calder] just took the information of the Farm Bureau application and was filling in some of the blanks on the Shelter Insurance application." Appellant claims that this divergence of testimony about how the representations were made creates a genuine dispute as to a material fact, that is, whether the representation was the result of a misrepresentation by Priesmeyer or the result of a mistake by the agent. We agree. Respondent argues that whether Priesmeyer read the application containing the incorrect information is irrelevant, for Appellants are bound by the application executed and submitted by them. Respondent claims that under Missouri law, an insured is bound by the information contained in the application regardless of whether the insured read and checked the application for accuracy, citing *Bearden v. Countryside Casualty Co.,* 352 S.W.2d 701 (Mo.App.1961). In *Bearden,* the insured failed to list several mortgages or encumbrances on the property. At trial, the insured testified that he orally told his insurance agent about the existing mortgages, but that the agent failed to write the information on the application. Respondent argues that the court in *Bearden* held that the insured was bound by the representations made in the application regardless of whether he read the application before signing it. However, while the *Bearden* court noted that a person who is competent to contract is ordinarily presumed to know the contents of a contract he signs and the fact that he does not read it or does not have it read to him before signing it does not rebut that presumption, nevertheless, that court also noted that "It is only where fraud, accident or mistake intervenes that one may be relieved under such circumstances." *Id.* at 706 (quoting, *Dickinson v. Bankers Life and Casualty Co.,* 283 S.W.2d 658 (Mo. App.1955)). While there was no evidence in *Bearden* of a mistake by the insurance agent, in our case, that is the very issue before us, and, thus, under *Bearden,* the

issue would have been allowed to go the trier of fact.

Respondent also relies on *Schnatzmeyer v. National Life Ins. Co.*, 791 S.W.2d 815 (Mo.App.1991). In that case, the Court of Appeals further defined the circumstances in which an insurer will be unable to void an issued policy on grounds of material misrepresentation. There, the plaintiff had sued to compel payment of proceeds allegedly due under a life insurance policy. The insurer, National Life, had withheld payment, claiming that the plaintiff had made a material misrepresentation on the application for life insurance by not disclosing that she was already afflicted with a serious illness. Like the case at bar, the insurer's agent had filled out the plaintiff's insurance application. Following a jury verdict for the plaintiff, the trial court granted the defendant's motion for judgment notwithstanding the verdict. On appeal, the plaintiff contended that the misrepresentations on the application resulted from the National Life's agent's mistake in filling out the application. The plaintiff further contended that the deceased had not been afforded a fair and reasonable opportunity to discover the contents of the application, pointing out that all the entries on the form were in the agent's handwriting, the questions were hurriedly asked, and the questions were sometimes paraphrased. *Id.* at 820. The plaintiff argued that the agent's method of procuring answers to the application questions was a mistake that waived the insurer's right to avoid the policy based on the misrepresentations.

In affirming the Circuit Court's granting of the motion for JNOV, the Court of Appeals stated that the defense of material misrepresentation is not waived merely because it was the insurer, not the insured, who omitted material information or included false information in the application. The court said,

> [A] mistake occurs either when the agent is given true answers but inserts erroneous ones without the knowledge

of the insured or where the agent fills in the application without asking any of the questions. Here, there is no evidence that [the deceased] gave true answers which the agent changed. Nor is there any evidence that the application was completed without [the deceased] answering questions. *Id.*

The present case is distinguishable from *Schnatzmeyer*, however. In *Schnatzmeyer*, the case was not disposed of by summary judgment but by trial; the insured admitted being asked at least some of the questions contained in the application and admitted signing the application after the agent completed it. In the case at bar, Respondent's agent, Calder, claims in his sworn affidavit that he "witnessed [Appellant] sign the application.. and the application was filled out completely when [Appellant] signed it. On the other hand, Appellant claims in his affidavit that "The 'boxes' on the Application were not checked" and "The 'remarks' section of the Application was blank when I signed the Application." In addition, Appellant claims "Tom Calder did not ask me hardly any questions; he just took the information off the Farm Bureau application and was filling in some of the blanks on the Shelter Insurance application." This court has said that an "insurer may be bound not only when the agent knows the truth, but when he is in a position where he should know the truth from the circumstances. A similar result obtains if the agent fills out the application *without questioning the applicant.*" *Russell v. Farmers and Merchants Insurance Co.*, 834 S.W.2d 209, 218 (Mo.App.1992) (quoting *Macalco, Inc. v. Gulf Insurance Co.*, 550 S.W.2d 883, 894–95 (Mo.App.1977)) (emphasis added).

If (1) Respondent's agent did not ask Appellant the questions concerning the prior losses and mortgage, and (2) Appellant was unaware that his application was incomplete, Appellant may have a valid claim to compel Respondent to perform under the insurance contract and the trier

of fact should be allowed to make that judgment. If, on the other hand, Respondent's agent did pose those questions to Appellant, Respondent has an affirmative defense of material misrepresentation. Under this record, we cannot determine, as a matter of law, which party's version of the events occurring February 15, 1994, is to be taken as true. There is ample evidence from which a jury could determine that the answers in the application were made after Appellant signed it and that the application's incompleteness is not a product of Appellant's bad faith, but rather is a product of agent Calder not questioning Appellant in sufficient detail. Therefore, viewing the facts in the light most favorable to the Appellant, we find that there is a genuine issue of material fact whether there was a material misrepresentation regarding prior losses and that summary judgment was not appropriate.

The judgment of the trial court is reversed and the case remanded for further proceedings.

All concur.