Joseph Donald VINSON,
Plaintiff-Appellant,

v.

Lillie Mae VINSON,
Defendant-Respondent.

No. 51041.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1987.

Daniel P. Card II, St. Louis, for plaintiff-appellant.

Timothy H. Battern, St. Louis, for defendant-respondent.

A.C. Brown, St. Louis, Third Party defendant-respondent.

Joseph V. Neill, St. Louis, guardian ad litem for minor.

REINHARD, Judge.

Plaintiff sought a declaratory judgment that he is not the natural father of C_____, an order setting aside the portion of the divorce decree requiring him to pay child support for C_____, and damages in tort for defendant's fraudulent misrepresentation and wrongful garnishment. Defendant, in her answer, asserted that, as a result of the divorce decree, the doctrine of res judicata barred plaintiff's claims. The jury found that plaintiff was not the natural father of C_____ and awarded him $32,-000 damages. The court then granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals; we affirm.

The record reveals that plaintiff Joseph Donald Vinson and defendant Lillie Mae Vinson were married in 1954. On October 3, 1970, C_____, the subject of this litigation, was born. In 1979, defendant sought a decree of legal separation and an order awarding her custody of the "parties' minor child, C_____" and child support. Plaintiff did not appear at the hearing. On August 2, 1979, the court entered a decree of legal separation by which it awarded custody of C_____ to defendant and ordered plaintiff to pay child support. Plaintiff then obtained counsel and, at his request, in June 1980, the court converted the decree of separation to a decree of dissolution and ordered plaintiff to pay $50.00 per week to support C_____.

At trial in the litigation now before us, plaintiff testified that the court in the divorce action found that C_____ "was born in the marriage," but he denied that the court had determined he was C_____'s natural father. Plaintiff also testified that he had sexual intercourse with defendant during the likely time period of C_____'s conception, that defendant repeatedly assured him that he was the father of C_____, and that he did not learn until February 1981 of the identity of one A.C. Brown or that Brown was C_____'s father. Plaintiff also said defendant "began to run garnishments on me when she moved out and left C_____ in the house with me. For a whole year she garnished me for child support when I was actually taking care of the child...."

The trial transcript reveals the following cross-examination of plaintiff:

Q: Mr. Vinson, let me just clear this up: Through all the proceedings, through the Legal Separation proceeding and through the divorce proceeding and through the support action, whatever that's called, it was your opinion that C_____ was not your child, but you never told anyone that?

A: That's correct.

At the close of plaintiff's evidence, and again at the close of all evidence, defendant filed motions to dismiss, alleging "the evidence is insufficient to sustain a verdict in favor of plaintiff." Both motions were denied.

The jury returned verdicts that plaintiff was not the natural father of C＿＿ and that A.C. Brown was his natural father, and it awarded plaintiff $32,000 in damages.[1] The court entered judgment based on those verdicts.

Defendant then filed motions for judgment notwithstanding the verdict, for a new trial, and to amend the judgment. In the motion for judgment n.o.v., defendant contended, among other things, that plaintiff's claim was barred by the doctrine of res judicata. The new trial motion and motion to amend were denied; the motion for judgment n.o.v. was granted. In its memorandum opinion, the trial court stated it was granting the judgment n.o.v. because "the doctrine of collateral estoppel bars the plaintiff Vinson from relitigating the issue of paternity which was determined in the dissolution action" and because "the present action is an impermissible collateral attack on a final judgment."

As a preliminary matter, we consider plaintiff's allegation that the trial court erred in granting the judgment n.o.v. because defendant did not comply with Rule 72.01. Plaintiff contends that defendant's motions for directed verdict "did not allege or assert any of the specific grounds raised by her in her subsequent motion for judgment n.o.v. but only asserted 'that the evidence is insufficient to sustain a verdict in favor of plaintiff.' "

▉▉ Rule 72.01(a) provides that "[a] motion for a directed verdict shall state the specific grounds therefor," and Rule 72.01(b) permits a party to request a judgment n.o.v. "in accordance with his motion for a directed verdict." However, granting a judgment n.o.v. is the equivalent of directing a verdict at the close of the evidence, *Arthur v. Jablonow*, 665 S.W.2d 364, 365 (Mo.App.1984), and nothing in Rule 72.01 prohibits a trial court from entering a directed verdict or a judgment n.o.v. without motion when merited. *See, Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984). A trial court may enter a judgment n.o.v. for a defendant when plaintiff's evidence establishes that an affirmative defense bars recovery. *See Overfield v. Garner*, 595 S.W.2d 446, 447 (Mo.App. 1980). Res judicata is an affirmative defense. Rule 55.08. We believe the following passage from *Rustici* is as applicable to a judgment n.o.v. as it is to a directed verdict:

> Nothing in Rule 72.01 prohibits a trial court from entering a directed verdict without motion when it is merited. The authority of trial courts to direct a verdict where there is no material issue of fact for the jury to decide "is part of the inherent power of the court, which is charged with the duty of determining *questions of the law.*" *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1155 (banc 1936). The general rule which we follow is that a trial court "may, in a proper case, direct a verdict at its own instance without any request therefor having been made by either party." 88 C.J.S., *Trial* § 249 (1955).

*Rustici*, 673 S.W.2d at 767 (emphasis added). Thus the trial court, having determined as a matter of law that the doctrine of res judicata was applicable, could properly enter a judgment n.o.v. despite any infirmities in defendant's motions.

We now consider plaintiff's principal point on the merits. In challenging the res judicata effect of the divorce decree, plaintiff contends, inter alia, that:

> that portion of the decree of dissolution of marriage, finding that the minor child had been born of the marriage and that plaintiff owed a duty of support had been procured by not only fraud and perjured testimony, but was also the result of extrinsic fraud and affirmative misrepresentations of material fact to plaintiff.

▉▉ Generally, the doctrine of res judicata refers to the effect of a prior judgment in a subsequent judicial proceeding. *Griffith v. Hammer*, 595 S.W.2d 292, 294 (Mo.App.1979). One aspect of res judicata is collateral estoppel, or issue preclusion, a doctrine which precludes the same parties from relitigating issues previously adjudicated. *Peoples-Home Life Insurance Co.*

---

**1.** At the request of C＿＿'s guardian ad litem, A.C. Brown was a third-party defendant.

*v. Haake,* 604 S.W.2d 1, 7 (Mo.App.1980). Collateral estoppel applies if four conditions are met: (1) the issue decided in the prior adjudication must be identical with the issue in the present action; (2) the prior adjudication must have resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or one in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity in the prior adjudication to litigate the issue. *Oates v. Safeco Insurance Co.,* 583 S.W.2d 713, 719 (Mo. banc 1979). This doctrine is applicable to all issues which were, or might have been, litigated in a divorce proceeding. *Hedgecorth v. Hedgecorth,* 463 S.W.2d 596, 598 (Mo.App. 1971).

■ All four requirements of *Oates* are met here. The issue, paternity, is the same here as in the divorce proceeding. The divorce action resulted in a judgment on the merits, and plaintiff was a party to that proceeding. Plaintiff also had a full and fair opportunity to litigate the paternity issue. He was present, he was represented by counsel, and, at the time, he harbored suspicions that he was not the natural father of C____, but he did not raise the issue.

Plaintiff's argument that the issue of paternity was not previously litigated directly contradicts statements in his brief where he says defendant's petition for a decree of legal separation referred to C____ as "a child born of the parties during the marriage" and that the circuit court, in its decrees of separation and dissolution, determined that C____ "had been born of the parties during the marriage ..." and, therefore, plaintiff had a duty to support him. There clearly was a determination that plaintiff is the natural father of C____.

■ Res judicata notwithstanding, a prior judgment can be set aside if it can be shown it was obtained by extrinsic fraud. *F____ v. F____,* 333 S.W.2d 320, 323 (Mo. App.1960). Extrinsic fraud refers to the fraudulent procurement of a judgment;

therefore, the fraud must relate, not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. *Jones v. Jones,* 254 S.W.2d 260, 261 (Mo.App.1953). As the *Jones* court stated:

> [T]he fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.

254 S.W.2d at 261. One who would establish extrinsic fraud must do so by clear, strong, cogent, and convincing evidence. *F____ v. F____,* 333 S.W.2d at 325.

■ Although the classification of alleged fraud as extrinsic or intrinsic sometimes is difficult, *Fadler v. Gabbert,* 333 Mo. 851, 868, 63 S.W.2d 121, 130 (1933), prior court opinions provide guidance. False averments in a divorce petition, false statements in an affidavit, and false testimony do not constitute extrinsic fraud. *F____ v. F____,* 333 S.W.2d at 323; *In re Marriage of Brown,* 703 S.W.2d 59, 61 (Mo.App.1985).

■ Examples of conduct constituting extrinsic fraud include the failure of a guardian ad litem to properly represent his ward in a divorce case, *Hemphill v. Hemphill,* 316 S.W.2d 582, 587 (Mo.1958); a husband's representations to his wife that his lawyer would look out for her interests and she had no need for her own lawyer, *Daffin v. Daffin,* 567 S.W.2d 672, 678 (Mo.App. 1978); some action by one party which prevents the appearance in court of the other party, *Jones,* 254 S.W.2d at 262–63; a false promise of a compromise which keeps the opposing party away from court, *Fadler,* 333 Mo. at 869, 63 S.W.2d at 130; and actions whereby an attorney "sells out" his client's interest to the other side or connives to bring about his client's defeat. *Id.,* 63 S.W.2d at 130. Moreover, for a judgment to be set aside on the ground of extrinsic fraud, the complaining party must show his absence of fault, neglect, or inattention to the case. *McCarty v. McCarty,*

300 S.W.2d 394, 401 (Mo.1957). After careful review, we conclude that the fraud involved here, if any,[2] is intrinsic and plaintiff is not entitled to have the dissolution decree set aside.

The court properly granted defendant's motion for judgment notwithstanding the verdict.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concurs.

---

2. Defendant argues that because plaintiff had "an opinion" he was not C_____'s natural father, no actionable fraud exists. Because of our holding that there was no extrinsic fraud, we need not address defendant's argument.