In re the Marriage of Robert David McKARNIN, Petitioner,

v.

Deborah Christine McKARNIN, Respondent,

and

City of Kansas City, Missouri and Board of Trustees for Kansas City Firefighters Pension System, Intervenors/Appellant.

No. WD 42517.

Missouri Court of Appeals, Western District.

July 10, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1990.

Application to Transfer Denied Oct. 16, 1990.

Robert David McKarnin, pro se.

Daniel J. Matula, G. Michael Fatall, Kansas City, for respondent.

Richard N. Ward, City Atty., Joseph R. Hachey, Salmon B. Mumma, Asst. City Attys., Kansas City, for intervenors/appellants.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

TURNAGE, Presiding Judge.

Deborah McKarnin filed a motion to set aside a decree of dissolution whereby her marriage to Robert McKarnin was dissolved. The court entered an order setting aside the decree of dissolution. The intervenors, City of Kansas City, Missouri, and Board of Trustees for the Kansas City Firefighters Pension System, appeal contending that the motion was not timely filed and that there was insufficient evidence to support a judgment setting aside the decree. Reversed.

Deborah and Robert were married in June 1966. There were two children born of the marriage, a son in 1967 and a daughter in 1972. Robert was employed by the Kansas City Fire Department which had a rule that required all firemen to be residents of the City of Kansas City. Although Robert was well aware of the rule, he preferred to live in the "country" and to fulfill that desire purchased a home in Raymore. For a number of years Robert and the family resided in Raymore, but Robert took precautions to keep the City from learning that he actually lived there. Robert gave an address within the City which was actually his parents' home. At that address he maintained a telephone with a call forwarding feature which allowed calls placed to that address to be forwarded to the house in Raymore. In addition, Robert went by his parents' home on his way home from work in the hope of throwing anyone off his trail who might be following him in an attempt to learn where he was living. Further, Robert made it well known to Deborah and the two children that the City had a residence rule and that he was trying to evade compliance. Deborah and the children were instructed on how to handle calls from people they did not recognize over the telephone and were told to be alert for cars passing the home in Raymore which might indicate someone was checking on him in relation to the residence rule.

Deborah testified that about 1976 Robert became so concerned about the residence rule that he took her with him to visit an attorney in Liberty. The attorney advised them that they should obtain a divorce

because "the City would not stand in the way of a man and his wife trying to get back together." Deborah testified that neither she nor Robert wanted to get a divorce, but that Robert followed the attorney's advice and filed a suit for divorce. Apparently that suit was never pursued and no judgment appears to have been entered on that suit.

Deborah testified that in 1987, Robert came home very concerned about a letter which the union had circulated to its members advising that the City was making a renewed effort to enforce the residence rule. The union stated that it would not support anyone who did not move back into the City. Robert told Deborah at that time that they would have to get a divorce and Robert again went to see the lawyer in Liberty. A dissolution petition was drawn, together with a property settlement agreement, and the petition was filed. Deborah signed an entry of appearance but did not obtain a lawyer and made no appearance when the case was heard. The dissolution decree was entered on August 26, 1987. Deborah testified that neither she nor Robert wanted a divorce and the only reason Robert obtained the divorce was in an effort to avoid the residence rule.

Deborah and the two children all testified that there was no change in the family's living pattern after the divorce. As before, Robert and Deborah lived together in the house in Raymore with the two children. They continued to take the children on vacations and to live the same as they had before the divorce.

Deborah testified that she was fully informed of the fact that Robert was filing the petition for dissolution and that she signed some paper in connection therewith. She said Robert wanted to make the dissolution look realistic so she and he jokingly discussed how they would divide their property so that a property settlement agreement could be drawn. Such agreement was drawn, signed by the parties, and presented to the court when the dissolution was entered.

In November 1988, an explosion took the lives of six Kansas City firemen, among them Robert McKarnin. Shortly thereafter, Deborah filed a motion to vacate the dissolution decree on the ground that there were misrepresentations made to the court and it was no longer equitable that the judgment remain in force. Attached to the motion was an affidavit by Deborah stating that she and Robert continued to live together as husband and wife after the dissolution decree and that Robert's representation to the court that there were irreconcilable differences was untrue.

On December 21, 1988, the court vacated the dissolution decree on a finding that there were never any irreconcilable differences between Robert and Deborah. Thereafter, the court set aside its judgment vacating the decree on the motion of the City of Kansas City and the Board of Trustees of the Kansas City Firefighters Pension System. The Trustees and the City were allowed to intervene and the court thereafter held a hearing on the motion to vacate the decree. The essence of Deborah's testimony at that hearing is set out above.

The theory of Deborah on which she based her request that the decree be vacated was that Robert had lied in his petition for dissolution and in his affidavit in support thereof when he stated that there were irreconcilable differences between them. Deborah also contends that Robert lied when he testified in the dissolution hearing that there were irreconcilable differences. With commendable frankness Deborah concedes that her motion to vacate was filed after the death of Robert in an effort to obtain widow's benefits from the Trustees and the City.

After hearing the evidence the court again entered a judgment vacating the decree. The court stated that the motion to vacate was treated as an action in equity pursuant to Rule 74.06(d). The court found that Robert had misrepresented that there were irreconcilable differences and that the marriage was irretrievably broken.

■ On this appeal the Trustees and the City contend that the court did not have jurisdiction of the motion to vacate the decree because it was brought more than

one year after the decree was entered and because there was insufficient evidence to support the judgment vacating the decree.

In *In re Marriage of Brown*, 703 S.W.2d 59, 60[1, 2] (Mo.App.1985), the court stated that "a court has equity jurisdiction to entertain a motion to vacate at any time if the judgment was procured by fraud practiced on the court." That long standing rule has been incorporated in Rule 74.06(d). Rule 74.06 was adopted in order to simplify the procedure for setting aside judgments. Rule 74.06(b) lists five grounds upon which a court may base an action to set aside a judgment. Rule 74.06(c) states the motion shall be made within a reasonable time and that a motion based on the first three grounds must be filed not more than one year after the judgment was entered. The second ground mentioned is fraud and misrepresentation. Here, the motion to vacate was filed more than one year after the decree was entered so such motion cannot be considered to have been filed under Rule 74.06(b).

Rule 74.06(d) provides that the rule does not limit the power of the court to entertain an independent action to set aside a judgment for fraud upon the court. Thus, the independent action in equity to set aside a judgment as such action has been recognized in this State for many years was preserved in Rule 74.06(d). The rule does not impose any time limits on bringing such action and as stated in *Brown*, there is no time limitation on the bringing of an independent action in equity to set aside a judgment. Thus, the motion, which was treated by the court as an action in equity to set aside the decree, was timely filed.

■ The independent action in equity to set aside a judgment, particularly judgments or decrees of divorce or dissolution of marriage, has been considered in numerous cases. In *F___ v. F___*, 333 S.W.2d 320, 323[1] (Mo.App.1960), the court held that a court of equity will vitiate decrees of divorce if the decree was procured by fraud. But the court stated there is a sharp distinction as to the nature of the fraud which must be shown before a court will vacate a divorce decree. The court stated:

> The fraud must relate, not to the merits of the action, that is, whether or not the prevailing party was entitled to the decree of divorce, but rather to some matter by which the prevailing party secured the decree.

In *Jones v. Jones*, 254 S.W.2d 260, 261[1, 2] (Mo.App.1953), the court held that equity has jurisdiction to set aside a judgment for fraud if the fraud related, not to the propriety of the judgment itself, but to the manner in which the judgment was obtained. The court stated:

> In other words, the fraud must have been extrinsic or collateral to the matters which either were or could have been presented and adjudicated in the original proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.

The court further explained that it is not in the province of this type of equity relief to give the losing party a retrial of matters which where tried or concluded by the original proceeding, but rather the relief is limited to those instances where the fraud was of such a nature that it forestalled an opportunity for a fair submission of the controversy.

■ From *Jones* it is clear that an action in equity to vacate a judgment can be based only on extrinsic fraud and not on intrinsic fraud. In *May Dept. Stores Co. v. Adworks Inc.*, 740 S.W.2d 383, 385[3] (Mo.App.1987), the court followed the Restatement, Second, Judgments in its definition of extrinsic and intrinsic fraud. The court held:

> "Extrinsic" fraud means "fraud that induced a party to default or to consent to judgment against him." ... "Intrinsic" fraud means "knowing use of perjured testimony or otherwise fabricated evidence."

■ *Jones* made it clear that equity may set aside a divorce decree only for extrinsic fraud because to set aside a judgment on the basis of intrinsic fraud would allow a party to retry matters either tried

or concluded by the judgment sought to be avoided. The basis of the relief afforded by equity in setting aside a divorce decree is to give relief in those instances where the fraud was of the character that prevented an opportunity for the fair submission of the case to the court which entered the decree.

In *Vinson v. Vinson*, 725 S.W.2d 121, 124[9] (Mo.App.1987), the court held that false averments in a divorce petition, false statements in an affidavit, and false testimony given in the trial do not constitute extrinsic fraud. This is in conformity with the rule that equity will not set aside a decree based on intrinsic fraud which includes the use of perjured testimony or other false evidence. Equity will only exercise this power in those cases where fraud has been practiced to prevent a party from having a fair opportunity to appear and defend an action, and not to retry the case on its merits.

Applying the above rules to the facts in this case, it is clear that Deborah did not prove any ground which would justify equity in setting aside the dissolution decree. The only ground she relied upon and proved was that Robert falsely stated both in the petition and in testimony that there were irreconcilable differences and the marriage was irretrievably broken. Under *Vinson*, this was intrinsic fraud and was insufficient to authorize a court of equity to set aside the decree.

Deborah contends, however, that Rule 74.06(b)(2) has abolished the distinction between intrinsic and extrinsic fraud. That rule states that a court may relieve a party from a final judgment for a number of reasons including "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Rule 74.06(b)(2) does not address an independent action in equity to set aside a judgment but only specifies a reason for which a court may vacate a judgment if a motion is filed under that subsection of the rule within one year after the entry of judgment. Only in that instance has the distinction between extrinsic and intrinsic fraud been eliminated. That rule does not affect an independent action in equity and Rule 74.06(d) retains the power of a court to entertain an independent action in equity to set aside a judgment for fraud upon the court. Equity exercises its power to vacate a dissolution decree only on a showing of extrinsic fraud as shown by the cases discussed above. While those cases were decided prior to the adoption of Rule 74.06, that rule does not purport to make any change in the grounds which must be proven to obtain relief by way of an independent action in equity. To abolish the distinction between intrinsic and extrinsic fraud in suits in equity to set aside a decree would result in the endless retrial of cases with the resultant uncertainty as to when a decree is final. Under Rule 74.-06(b) the distinction has been abolished but motions under that rule must be filed within one year. Thus, a decree may be set aside for either intrinsic or extrinsic fraud if the motion is filed within one year of the date of the judgment. But after one year, the decree is subject to attack only by an independent action in equity on a showing of extrinsic fraud when the basis of relief is fraud.

There is yet another ground upon which Deborah's action must fail. In *Vinson*, the court stated that "for a judgment to be set aside on the ground of extrinsic fraud, the complaining party must show his absence of fault, neglect, or inattention to the case." *Id.* 725 S.W.2d 124[10–12]. Here, Deborah's own evidence showed that she was fully aware of what Robert was doing and knew when the divorce had been granted, yet took no action to protect her rights. In that situation Deborah has not shown herself to be free from neglect as she must to be entitled to relief.

The judgment is reversed and this cause is remanded with directions to enter judgment in favor of the City and the Trustees and deny the action in equity to set aside the decree.

All concur.