**Chi–Hsi LIN, Respondent,**

v.

**Her–Mei LIN, Appellant.**

No. 17822.

Missouri Court of Appeals, Southern District, Division One.

June 19, 1992.

---

Kenneth W. Johnson, Springfield, for appellant.

John S. Pratt, Nancy Steffen Rahmeyer, Pratt & Fossard, Springfield, for respondent.

PARRISH, Judge.

Appellant Her–Mei Lin filed a pleading denominated "Motion to Set Aside Decree of Dissolution of Marriage and Property Settlement Agreement." It was treated as an independent action in equity to set aside a judgment in a dissolution of marriage case. The part of the dissolution action that was the focus of appellant's challenges was the disposition of property that occurred by reason of the dissolution court's approval of a written separation agreement that the parties had entered into in accordance with § 452.325, RSMo 1986. The trial court denied the action to set aside the judgment.[1] This court affirms.

Appellant and respondent were married August 28, 1974, in Taiwan. Both were natives of Taiwan. Respondent, a physician, was engaged in a medical practice in Springfield, Missouri. He returned to Springfield from Taiwan shortly after the marriage. Appellant did not accompany her husband to Springfield. Her arrival in the United States was delayed by "paperwork" that had to be completed in order for her to enter the country. She arrived in Springfield in February 1975.

At the time of the marriage, appellant was 25 years old. Respondent was 36. She was a college graduate; he a medical doctor. They "dated" or "courted" for two weeks before being married. Their parents "helped arrange" their marriage after a "matchmaker" had begun arranging it. Appellant explained the wedding arrangements by her answers to the following questions:

Q. Tell the Court how you met Dr. Lin?

A. It was arranged by matchmaker.

. . . . .

Q. Could you explain that further? What's a matchmaker?

A. He went back to Taiwan, and he tell his parents, and his parents want him to bring a bride back to the United States because he say he was kind of lonesome. He already—He was 36. He needed to have a woman in the house to cook and raise up the kids for him.

Q. All right. Tell us what the matchmaker does to obtain a wife for someone looking for a wife in Taiwan.

A. He wanted to have someone from a good family and rich so can help his business, too.

Q. Well, how did you get acquainted with Dr. Lin, then?

A. It's by matchmaker.

Q. Okay. Who was the matchmaker?

A. A lady. Just a lady.

Q. Is the—Is the job of a matchmaker to know who the eligible girls are for potential husbands?

A. Yeah, they usually have some information. I don't know how to explain that. They just—They just help people, whoever—like a friend.

The marriage was dissolved August 20, 1986, by the Circuit Court of Greene County, Missouri. There were three children. Appellant and respondent were awarded joint custody of the children. Respondent was required to pay child support to appel-

---

1. Appellant's pleading included a motion to modify the original judgment whereby she sought an increase in child support payments. That relief was granted. The modification of the amount of child support was not appealed.

lant during the months when she had physical custody of the children. Respondent was ordered to pay the sum of $19,800 to appellant, payable in monthly installments of $550 each for three years. These awards were in accordance with a separation agreement that the parties had executed. Appellant also received the family home, furniture, and a Chevrolet van. Respondent received the assets from his medical practice, bank accounts, an automobile and other property. The value of the property that was distributed to respondent was substantially greater than the value of the property that was distributed to appellant.

Appellant was not represented by an attorney in the dissolution action. The separation agreement of the parties acknowledged that respondent was represented by an attorney but that appellant was not. It stated:

> Wife acknowledges that she does not rely upon any advice or representations from the attorney for husband, realizing that said attorney may only counsel and represent husband and does not and cannot represent wife in connection with the preparation of this agreement, and each of the parties mutually agree that they have fully read and examined this agreement in its entirety and fully understand same,....

At the trial of this case, appellant testified that she had sought legal advice from an attorney in 1985. She saw him only one time. She told the attorney who she consulted that her husband wanted "to get [a] divorce." She testified that she did not "file for divorce" because she was afraid. When asked why she was afraid, she answered, "I don't know."

A diary that appellant testified she had maintained contained an entry dated September 26, 1985. Appellant was asked to read from that entry. She read:

> What shall I do? If the agreement use one lawyer, and he wouldn't tell me all the truth, whatever I suppose to have; but if—if I try to file and use Mr. Moon [the attorney appellant had previously consulted], then I would—I would mess

it up and—I mess up everything, and I can't do it.

Appellant maintained several diaries. She testified that she had written in them every day. Three diaries were presented at the trial of this case. Appellant was asked if she had destroyed other diaries. She answered, "Yes." She testified that her diaries were truthful; that she had not changed any entries "at any time after the divorce."

Respondent found appellant's diaries prior to the time when he filed the dissolution of marriage action. The diaries told of sexual relations that appellant had with other men during the marriage. Appellant testified that respondent told her if she got an attorney and fought the divorce, he would "publish [her] diary"; that she would "lose the children for sure." He told her that he would pay money in the settlement of their divorce—she did not remember how much. However, he told her that if she fought the divorce, she would get nothing.

Entries from appellant's diaries were read into evidence at trial. A May 20, 1983, entry was read. It included the statement, "I began to wonder how in the world I can live with this man." Another entry said, "I'm also thinking that, together with Chi–Chi [respondent], it is very boring. I feel I already have no love toward him. My relationship—My relation with him is just like my relation with my parents before." The diary included the assessment, "But I can tolerate this until the day I become independent."

An entry dated May 25, 1983, referred to two other men for whom appellant expressed love. It stated, with regard to respondent, "I already have no love for Chi–Chi." Respondent's attorney read from the same entry, "If today he, Chi–Chi, suddenly announced he loved another woman and wanted to leave me, I'd be very glad." He then asked appellant, "Did you write that." She answered, "Yes, I did."

An entry that appellant admitted writing September 5, 1983, said, "This Chi–Chi, the more I look at him the more I feel disgusted. I hate him to death"; and, "Yesterday

and today, all for a paper bag we quarrel. He is simply an old man. I'm really mad at him. The more we're together, the more it becomes nonsense. He doesn't understand how to love his wife. I hate him."

 Appellant's brief raises two points on appeal. The first alleges that "[t]he Trial Court erred in determining that if fraud was committed upon the Appellant by Respondent, it was occasioned by the inattention, refusal and neglect of Appellant." It asserts that "such finding" is not supported by substantial evidence in the record. Appellant claims that "the record clearly indicates that Appellant's supposed acquiescence in the settlement agreement was the result of Appellant's fear of Respondent, ignorance of the American judicial system, and coercion exercised by Respondent against Appellant."

Appellate review of this case is undertaken pursuant to Rule 73.01(c) in that it was a non-jury case. That rule, as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), requires "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32. *Hicks v. Hicks*, 798 S.W.2d 524, 525–26 (Mo.App.1990). "Due deference is given to the trial court's opportunity to have viewed and assessed the credibility of the witnesses." *Matlock v. Matlock*, 815 S.W.2d 110, 113 (Mo.App.1991); *see* Rule 73.01(c)(2).

Rule 74.06(b) permits a court to relieve a party from a final judgment upon the party filing a motion for that purpose. A motion filed under the provisions of that rule that seeks relief on the basis of fraud must be filed "not more than one year after the judgment ... was entered." Rule 74.06(c). Nevertheless, the power of the court to entertain an independent action to set aside a judgment for fraud upon the court is not limited by Rule 74.06. *McKarnin v. McKarnin*, 795 S.W.2d 436, 439 (Mo.App. 1990); Rule 74.06(d). "[T]here is no time limitation on the bringing of an independent action in equity to set aside a judgment." *McKarnin, supra.* However, an independent action in equity that seeks to set aside a judgment must be based on an extrinsic fraud that was perpetrated upon the court. *Id.* Even then, a judgment will be set aside in equity on the basis of extrinsic fraud only "in those cases where fraud has been practiced to prevent a party from having a fair opportunity to appear and defend an action, and not to retry the case on its merits." *Id.* at 440. "Moreover, for a judgment to be set aside on the ground of extrinsic fraud, the complaining party must show his [or her] absence of fault, neglect, or inattention to the case." *Vinson v. Vinson*, 725 S.W.2d 121, 124 (Mo.App.1987).

The trial court filed a memorandum on the same date it entered judgment in this case. The memorandum included the following findings:

It is not the task of this Court to consider whether [wife] received an equal or a just settlement of property rights in the original decree. Further, the Court need not speculate as to what the result might have been if [wife] had counsel and a trial in the original case. Rather, the issue for this Court ... is to determine if there was extrinsic fraud so that the Court should set aside the property settlement approved by Judge Bacon [the trial judge in the dissolution of marriage action].

Even if the Court should find extrinsic fraud, the Court still cannot disturb the prior decree if [wife] were at fault, neglectful or inattentive as announced in *McKarnin v. McKarnin,* at Page 440.

This Court believes that it should not set aside the original decree. [Wife] testified before Judge Bacon that she was satisfied with the provisions of the property settlement. Further, her writings indicate that at that time, she knew that if she went ahead without an attorney, she would be cheated. The Court believes that [wife] desired to proceed without counsel, because she did not want the dissolution to "drag out", and, because she had other romantic interests at the time.

This Court holds that if misrepresentations were made, the [wife] did not rely on those misrepresentations. [Wife] contended that she was so in fear of and dominated by [husband] that she was afraid to oppose [husband] and contest the dissolution. Yet, her fear of [husband] was not so great that it kept her from having adulterous affairs, and after the dissolution, she continued co-habitation [sic] with [husband] at her home and at his home. Talk of setting aside the decree occurred after tremendous financial loss by [wife] and after [she] started keeping company with other men. Further, the Court believes that the [wife] could have easily removed herself from [husband's] alleged domination had she chose [sic] to do so.

Even if there had been extrinsic fraud, this Court believes that [wife's] claim should not be allowed, because she did not show her absence of fault, neglect or inattention to the case.

The testimony and other evidence recited in the trial transcript is consistent with the findings that the trial court set out in its memorandum. The determination of what weight should be given to the testimony of the various witnesses was a task for the trial court. The trial court was obviously influenced in this regard by the contents of the various diaries that appellant maintained during the course of her marriage to respondent. A review of the record on appeal lends support to the trial court's assessment that appellant had reason to agree to a settlement of the dissolution case in order to avoid revelations of evidence at a trial that would have been unfavorable to her.

The trial court concluded that if there was extrinsic fraud, appellant could not assert it as a grounds to set aside the decree in the dissolution case because appellant was not shown to be free of fault, neglect or inattention in that case. That conclusion is supported by substantial evidence. The knowing participation in the dissolution by appellant, being fully cognizant that she could further protect her rights by securing counsel, but failing to do so, demonstrates neglect. Appellant is the party who now complains about the dissolution action. In order to avail of the grounds of extrinsic fraud for purposes of setting aside the judgment in the dissolution case, the party complaining must be free of neglect. *Vinson v. Vinson, supra.* Appellant's first point is denied.

Appellant's second point complains that the trial court failed to make a finding that respondent committed fraud in procuring her acquiescence in the property settlement agreement in their dissolution action. She asserts that respondent failed to disclose to her, in the course of negotiating the property settlement agreement, the value of certain real estate owned by the parties and the value of respondent's medical practice and that, "as a matter of law," this constituted an act of fraud. As was stated in addressing appellant's first point, before appellant can assert extrinsic fraud as a basis for setting aside the judgment in the dissolution case, she must show that she was free of fault, neglect or inattention with respect to the fraud that she asserts was perpetrated on the court in the dissolution action. This was not shown. Appellant is, therefore, not entitled to assert a claim of extrinsic fraud as a basis for setting aside the judgment in the dissolution case. Her second point is moot.

The judgment of the trial court is supported by substantial evidence. It is not against the weight of the evidence. It constitutes neither an erroneous declaration of law nor an erroneous application of law. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.