**Allen W. LIETZKE, Respondent,**

v.

**Robert L. SNODDY, d/b/a Snoddy's Store, Appellant.**

**No. WD 48367.**

Missouri Court of Appeals, Western District.

June 28, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied Sept. 20, 1994.

---

Gary G. Sprick, Fayette, MO, for appellant.

James J. Wheeler, Keytesville, MO, for respondent.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Robert Snoddy appeals the decision of the trial court granting relief to Allen Lietzke, on a petition in equity asking the court to set aside a prior judgment which had been rendered against him in favor of Snoddy.

Snoddy brought suit against Lietzke alleging that Lietzke was indebted to him on two promissory notes and an open account. Summons was issued and served on Lietzke on April 10, 1992. Lietzke defaulted and on May 12, 1992, judgment was entered in favor of Snoddy. On May 22, 1992, Lietzke filed a motion and affidavit to set aside the default judgment. On June 30, 1992, an evidentiary hearing was held and the court overruled Lietzke's motion and refused to set aside the default judgment. Lietzke did not appeal the denial of his motion to set aside the default judgment.

On November 9, 1992, Lietzke filed the instant case, entitled "Petition in Equity to Set Aside Default Judgment Obtained by .Fraud and Motion to Set Aside Default Judgment Under Supreme Court Rule 74.06." Lietzke alleged the default judgment obtained in the prior case was a result of fraud. After a trial, the court entered a judgment in favor of Lietzke. It is from this judgment that appellant Snoddy appeals.

At trial, Randy Yaeger, sheriff of Howard County, testified that he had delivered a letter to Lietzke on March 5, 1992, at the request of Snoddy's attorney. On April 10, 1992, Sheriff Yaeger served a summons and petition on Lietzke.

Sheriff Yaeger served the summons and petition on Lietzke at Ron's Garage in New Franklin, Missouri. He testified:

> When I served the paper to him I explained what the paper was and handed it to him, he more or less pitched it back and said let's go get this taken care of once and for all, and I followed him to Robert Snoddy's house on Highway 87.

At Snoddy's house, Sheriff Yaeger again served the papers on Lietzke. Lietzke stated that he was tired of being harassed and threw the papers on the ground, turned and walked off.

Sheriff Yaeger stated that he had known Lietzke for many years and had served papers on him in two other cases. He served the papers on Lietzke in this case in the same manner that he had in the prior cases. He gave Lietzke the service papers and told him it was in regards to "Snoddy versus Allen Lietzke."

Respondent Lietzke testified that he was sixty-six years old and had a high school education. Lietzke had a farming operation

covering over eight hundred acres, along with rental property in Jefferson City and an interest in an oil lease in Texas.

Lietzke testified that he had agreed to let Don Cowherd, President of Boonslick Bank in Boonville, Missouri, try to work out some kind of agreement with Snoddy and thought Cowherd was having contact with Snoddy. Lietzke did not recall receiving a letter, in March of 1992, or any other correspondence from Snoddy's attorney, Gary Sprick. Lietzke acknowledged that he handled his mail "poorly" and at times would not pick it up for three or four weeks. He did not have a telephone during 1992.

Lietzke testified that Sheriff Yaeger handed him some papers, both at Ron's Garage and at Snoddy's residence, where he threw the papers down and left. He stated that he assumed the papers had something to do with the bills. Lietzke acknowledged that "papers" had been served on him in the past by Sheriff Yaeger and that he understood what they meant. He claims he did not understand what the papers were that the sheriff served on him at Ron's Garage. He stated that at Snoddy's home he threw that papers down because he was "mad."

Don Cowherd testified that Lietzke came to the bank about the problem with his account at Snoddy's Store. Cowherd had several telephone conversations with Snoddy, in January and February of 1992, to see if there was some common ground or some kind of solution that could be worked out. Lietzke could never agree on what he thought he owed Snoddy so it was difficult to work out a solution. Cowherd had a telephone conversation with Snoddy's attorney, Gary Sprick, and received a letter from him in March, 1992. He did not know that suit had been filed against Lietzke until after the judgment was entered. Lietzke testified that he understood Cowherd was not representing him as an attorney.

At the trial, Robert Snoddy testified that at the hearing in May, 1992, on his suit against Lietzke, he told the judge that Lietzke owed him $67,197.38 on the July 21, 1991, note and $7,559.90 on an undated note, both of which Lietzke had signed.

Snoddy raises three points of error in the trial court's decision to set aside the prior final judgment. First, because Lietzke was negligent in allowing the default judgment to be taken against him, he is not entitled to equitable relief under the circumstances. Second, because equitable relief is only authorized when a judgment has been procured by extrinsic fraud and Lietzke did not plead or prove there was extrinsic fraud. Finally, Snoddy contends the trial court erred in not granting his motion for summary judgment because Lietzke's cause of action was barred by res judicata. Because the case is reversed on other grounds, Snoddy's final point is not discussed herein.

This court will sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously states or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

 Lietzke's original and first amended petitions were titled "Petition in Equity to Set Aside Default Judgment Obtained by Fraud and Motion to Set Aside Default Judgment Under Supreme Court Rule 74.06." Rule 74.06 provides in part:

(b) Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud, (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

In order for one to prevail in setting aside a default judgment on equitable grounds he must show, 1) a meritorious defense; 2) good reason or excuse for default; and 3) that no injustice will accrue to the party who ob-

tained default judgment as result of setting aside the judgment. *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97 (Mo. banc 1989); *Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883 (Mo. banc 1987). An action in equity, to vacate a judgment, can only be based on extrinsic fraud and not on intrinsic fraud. *McKarnin v. McKarnin*, 795 S.W.2d 436, 439 (Mo.App.1990). A judgment cannot be set aside on the basis of fraud, unless it is shown that fraud was practiced in the act of obtaining the judgment, fraud went to the manner in which the judgment was procured, fraud prevented the unsuccessful party from presenting his case or defense, or that fraud went to extrinsic collateral acts or matters not before the court in the suit in which judgment was granted. *Orrock v. Crouse Realtors, Inc.*, 813 S.W.2d 929, 931 (Mo.App. 1991).

█ Lietzke attempts to justify his actions of throwing away the service papers and in not defending the suit, by alleging in his brief, that he was misled because Snoddy had Sheriff Yaeger deliver a demand letter to him. Lietzke states that he did not know that he was being sued and that he did not realize the difference between being served with a demand letter and service papers.

Lietzke testified upon direct examination by his own counsel as follows:

Q. So did you receive a letter delivered to you by the sheriff from Mr. Sprick in March of 1992?

A. I possibly did.

Q. You remember it?

A. Not really.

It is difficult to understand how Lietzke could have confused the demand letter and service papers, when he doesn't remember receiving the demand letter. When the service papers were served on Lietzke, Sheriff Yaeger explained to him what they were. The sheriff testified that he had served papers upon Lietzke in other cases. Lietzke acknowledged that he had been served papers in the past and understood what they were. The sheriff testified, "... I served

him the service papers and explained to him it was Snoddy versus Allen Lietzke in reference to the incident that he was dealing with" and told Lietzke "... that is something you have to work out with the court system ..." Lietzke testified that "I assumed they had something to do with the bills, but I really didn't look at them."

We find nothing improper with Sheriff Yaeger delivering the demand letter to Lietzke. The evidence suggests that personal delivery of the letter might have been the only realistic way to communicate with Lietzke. He had no phone in 1992. He testified that he handled his mail "poorly" and at times did not pick up his mail for "three or four weeks, maybe longer." We cannot fault the sheriff or Snoddy for making the extra effort to communicate with Lietzke.

Lietzke contends that Snoddy caused him to believe the matter was being resolved by negotiation or that negotiations were "continuing." Lietzke states that he relied upon the efforts of Don Cowherd to settle this dispute. Mr. Cowherd had a couple of telephone conversations with Snoddy, placed a call to Snoddy's attorney, Gary Sprick, and received one letter from Mr. Sprick. After Mr. Cowherd received the letter from Mr. Sprick, he testified that he "didn't do anything." There was never a meeting between Cowherd, Snoddy, and Lietzke. Lietzke was well aware that Mr. Cowherd was a banker and not an attorney. There was no contact of any kind with Snoddy or his attorney after the suit was filed on April 8, 1992, until after the default judgment was entered. Lietzke was properly served with process. There was no fraud or excusable neglect in the rendition of Snoddy's judgment. There is no dispute that Lietzke threw the service papers on the ground and walked off leaving them there. We find no authority or evidence which establishes that Lietzke's conduct in ignoring the service of process was excusable. Lietzke's suit to set aside the default judgment failed to demonstrate a good reason or excuse. There was not substantial evidence of neglect under Rule 74.06(b) to support the judgment on Lietzke's petition.

The judgment is reversed. The case is remanded to the trial court to reinstate the default judgment.

All concur.