**Linda M. SANDERS, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Cigna Insurance Company, and ABF Freight System Inc., Respondents.**

**No. WD 49800.**

Missouri Court of Appeals,
Western District.

June 20, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied
Sept. 19, 1995.

---

Dennis Egan, Kansas City, Kevin McMaster, Wichita, for appellant.

Paul Wickens, James Thompson, Kansas City, for respondents INA and CIGNA.

Kristine Focht, Kansas City, Allan Coon, Olathe, for respondent ABF.

Before HANNA, P.J., and SPINDEN and LAURA DENVIR STITH, JJ.

SPINDEN, Judge.

Linda M. Sanders claims that Insurance Company of North America (INA) defrauded her in 1987 by lying to her about the amount of uninsured motorist benefits available to her under its policy. She has initiated this suit in equity to have the judgment of settlement entered in 1987 set aside because of fraud upon the court. The trial court granted summary judgment for INA. We reverse and remand for further proceedings on Sanders' claim.

INA issued the policy to ABF Freight System, Inc., which employed Sanders' husband as a truck driver. Sanders' husband was killed in 1986 in a highway crash while driving one of ABF's trucks. The driver of the other vehicle was not insured, and Sanders' husband was an "insured" under the policy.

Sanders claims that INA misrepresented the extent of uninsured motorist coverage as being the minimum coverage required by law ($25,000) when the policy actually provided "at least" coverage of $1 million. She sued in two counts. In Count I, she sought to set aside the 1987 judgment because of INA's and ABF's "fraudulent misrepresentations." In Count II, she asserted a claim that INA was vexatious in refusing to pay "the true policy limits." In addition to INA, she sued CIGNA Insurance Company, INA's parent organization, and ABF. On June 3, 1994, the circuit court sustained the defendants' motion for summary judgment "on the grounds of res judicata and collateral estoppel."

Sanders' husband, George, was killed on October 13, 1986, while driving one of ABF's tractor-trailer rigs on a rain-slick highway in Pemiscot County near Hayti. A tractor-trailer rig driven by Jerry Wayne Page was traveling in the opposite direction when cars ahead of it slowed or stopped. Page lost control of the rig. It jack-knifed, crossed the center line and crashed head-on into George Sanders' rig. Authorities faulted Page for the collision. Page's rig was not insured.

George Sanders was covered as an "insured" under INA's policy. Initially, ABF told his wife that ABF had no insurance coverage; it was self-insured. She learned from state officials that ABF was insured by INA. In response to her inquiries, INA initially told her that its policy did not provide uninsured motorist coverage. It later said that it did provide coverage, but only for the statutory limit of $25,000.

On June 12, 1987, Sanders demanded "payment of the full uninsured motorist vehicle coverage limit." INA and ABF offered on August 20, 1987, to settle for $25,000, which it described as the full extent of the policy's uninsured motorist coverage. Sanders agreed. Although Sanders had not filed a wrongful death action, the parties filed in the circuit court of Cape Girardeau County a document entitled, "Petition for Approval of Settlement of Wrongful Death Claim," and captioned it: "Linda Marie Sanders, Plaintiff, v. Insurance Company of North America, Defendant." Both parties signed as petitioners and averred, "The petitioners ... have settled the uninsured motorist claim for the death of George Dannie Sanders, Jr. for the sum of ... $25,000 ..., and request that this Court approve said settlement pursuant to § 537.095(3) of the Revised Statutes of Missouri." Sanders signed a document entitled, "Release and Trust Agreement," in which she said:

> Received of Insurance Company of North America and Arkansas Best Corporation and ABF Freight Systems, Inc. hereinafter called the companies, the sum of ... $25,000 ..., in full settlement and final discharge of all claims for uninsured motorist coverages under Policy No. ISA 1400, Insurance Company of North America. This release releases all bodily injuries known and unknown, and for the wrongful death of George Dannie Sanders, Jr....

In this lawsuit, she alleges that she learned in September 1990 that the defendants had conspired "to fraudulently misrepresent and attempt to cover up the true amount of available uninsured motorist coverage[.]" Sand-

ers contends that INA, upon learning that its policy provided unlimited coverage, conspired with ABF to falsify the policy to indicate that uninsured motorist coverage was limited to $25,000.

On April 26, 1994, INA and CIGNA filed a joint motion for summary judgment. They assumed, for the purpose of making their motion, that they had made the misrepresentations averred by Sanders. They argued that Sanders' claim was unlawful because (1) the judgment entered by the Cape Girardeau Circuit Court was *res judicata;* (2) the trial court lacked jurisdiction to vacate the 1987 judgment under Rule 74.06 governing set aside of judgments; (3) § 375.420, RSMo, governing a vexatious refusal to pay claim barred Sanders' fraud claim; and (4) Sanders could not establish that she relied on any misrepresentations. On May 12, 1994, ABF joined INA's and CIGNA's motion. On May 20, 1994, INA and CIGNA filed a second motion for summary judgment in which they requested that the trial court declare that the limit of INA's uninsured motorist coverage was $25,000 in Missouri. On May 24, 1994, CIGNA filed a third motion for summary judgment in which it contended that it was a separate entity from INA and had no liability in Sanders' claim. On May 26, 1994, ABF also joined INA's and CIGNA's second motion for summary judgment.

On June 3, 1994, the trial court granted summary judgment for the defendants. The order said:

> Now, on this *3rd* day of June, 1994, the Court considers Defendant ABF Freight Systems, Inc., CIGNA Insurance Company and the Insurance Company of North America's Motion for Summary Judgment[1] with suggestions in support and suggestions in opposition and being fully advised in the premises,
>
> **IT IS HEREBY ORDERED** that Defendant ABF Freight Systems, Inc., CIGNA Insurance Company and the Insurance Company of North America's Motion for Summary Judgment is **SUSTAINED** on

the grounds of res judicata and collateral estoppel.

In appealing the trial court's granting summary judgment, Sanders asserts four points of error. The first point, however, says that the trial court "erred in granting defendants' motion for summary judgment because of the reasons setout [sic] in Points II through IV." This is not a proper point relied on. We deem her appeal to be three points: (1) the defendants did not establish the requisite elements of *res judicata* and collateral estoppel; (2) the trial court erroneously failed to consider Sanders' claim under Rule 74.06 for a set aside of the prior judgment; and (3) the trial court failed to recognize Sanders' right to assert an independent claim for fraud.

Sanders has had much difficulty understanding the nature of her lawsuit. In her response to the defendants' motion for summary judgment, she argued to the trial court, "Rule 74.06 simply has no applications [sic] to this action since plaintiff has not made an attempt to set aside a *judgment* under Rule 74.06[.]"[2] She contended that, instead, she sought to set aside a settlement. She misunderstood that the court's approval of the settlement in 1987 was a judgment. The petition asking for the court's approval of the settlement cited § 537.095.3, RSMo 1986, which said:

> [U]pon the approval of any settlement for which a petition or application for such approval has been filed, the court shall state the total settlement approved. The court shall then enter a *judgment* as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.[3]

In approving the settlement, the court issued a "Judgment Memorandum." Sanders was wrong; she did seek to set aside a judgment.

In arguing the defendants' motion for summary judgment to the trial court, Sanders retreated a bit. She still insisted that she was not seeking to set aside a judgment, but

---

1. The trial court did not identify which motion.

2. The emphasis was in the original.

3. We added the emphasis.

she offered to amend her pleading to contend for a set aside of a judgment pursuant to Rule 74.06(d).

■ The trial court erred by not recognizing Sanders' claim as an independent cause of action in equity to set aside a judgment for fraud on the court. Her petition did not cite Rule 74.06, but the rule does not create the action. The action existed long before Rule 74.06. *Jones v. Jones,* 254 S.W.2d 260 (Mo.App.1953). The rule merely recognizes that the cause of action exists and mandates that courts continue entertaining it.

■ Hence, to the extent that Sanders has properly pleaded an independent action in equity to set aside a judgment for fraud on the court, *res judicata* and collateral estoppel have no bearing on the case. After all, the purpose of the action is to set aside an otherwise final judgment which, but for equity, would not be subject to reconsideration because of the doctrine of *res judicata.*

■ An independent action in equity to set aside a judgment must be based on extrinsic fraud, or fraud on the court. *Id.* at 261; *McKarnin v. McKarnin,* 795 S.W.2d 436, 439 (Mo.App.1990). Missouri courts have had some difficulty in defining extrinsic fraud, but the most recent cases have adopted the definition proffered in RESTATEMENT (SECOND) OF JUDGMENTS § 70 cmt. c (1982): "fraud that induced a party to default or to consent to judgment against him." *Thompson v. Columbia Mutual Insurance Company,* 820 S.W.2d 626, 631 (Mo.App. 1991); *The May Department Stores Company v. Adworks, Inc.,* 740 S.W.2d 383, 385 (Mo.App.1987).

That definition describes Sanders' claim. She contends that she was induced to settle with INA for only $25,000 because INA fraudulently caused her to believe that $25,000 was the extent of its coverage for uninsured motorists.

INA argues to the contrary that the alleged misrepresentation was intrinsic fraud. If INA were correct, the fraud alleged by Sanders would be insufficient to support an action in equity to set aside the judgment. *Jones,* 254 S.W.2d at 261. The RESTATEMENT

defines intrinsic fraud as "knowing use of perjured testimony or otherwise fabricated evidence." *Id.* Although Sanders alleges fabricated evidence and thereby appears to make this a close case, we conclude that INA's use of the alleged misrepresentation— to induce Sanders to settle her claim for much less than she had a right to demand— causes this to be a case of extrinsic fraud. This was tantamount to her being fraudulently deprived of her day in court. "[W]here the fraud prevented the suitor from a trial or from the full presentation of his case[, the deceit was extrinsic.] ... A judgment procured by fraud is regarded as perpetrated on the court as well as on the injured party." *Daffin v. Daffin,* 567 S.W.2d 672, 678–79 (Mo.App.1978).

We are especially guided by Judge Satz in *May Department Stores,* 740 S.W.2d at 383. There, in considering an independent action in equity to set aside a judgment for fraud on the court, he concluded that a party's making a false promise to induce the opposing party into a settlement was extrinsic fraud. Noting the difficulty with determining whether a matter involved intrinsic or extrinsic fraud, he said:

These definitions have been embraced at times and obfuscated at times.

We need not concern ourselves here with the obfuscations. As noted, defendant claims its corporate president was fraudulently induced to consent to the judgment of record and, thereby, was induced to waive the corporation's defenses. If properly pleaded, this is a classic claim of "extrinsic fraud."

*Id.* at 385.

INA argues that we should read *May Department Stores* narrowly; that the turning point of the case was the false promise. Not so. Judge Satz made clear that the turning point was the use of fraud to induce the opposing party to enter into a consent judgment. That seems to be precisely the nature of Sanders' claim. We conclude that she has pleaded "a classic claim" of extrinsic fraud. Hence, the trial court erred in not recognizing the nature of Sanders' claim. As an independent action in equity to set aside a

judgment for fraud upon the court, the trial court should not have applied the doctrines of *res judicata* and collateral estoppel to block her claim. We remand the case for further proceedings.

All concur.